T. S. GIBBES and WIFE *v.* JENKINS and others.

A continuance of church leases, is expected as a matter of course, without any covenant of renewal.

The good will for such a continuance, arising from the ownership of the old lease, constitutes a recognized and valuable interest, although the corporation granting such lease is not bound to continue it, or grant a renewal.

The new lease, in such cases, is held a continuance of the original term, for the protection of the rights of parties who had liens upon or interests in such term.

One purchasing a leasehold, which is subject to a mortgage, and contains no covenant of renewal, cannot escape the lien of the mortgage, by suffering the lease to expire, and afterwards obtaining a new lease for the premises.

---

(a) See *Tolley* v. *Greene*, 2 Sand. Ch. R. 91.

Such new lease is in equity subject to the mortgage, precisely as the former one was when its term expired.

October 18 ; December 6th, 1845.

THE bill in this cause, filed June 28th, 1844, stated that on the 19th day of April, 1815, The Rectors, Church-wardens and Vestry-men of Trinity Church, in the city of New York, executed a lease of two lots of ground owned by them, situated on Murray street, to Jane Adams, for the term of nineteen years from the 25th day of March, 1815, reserving an annual rent of $303 30 for the first five years of the term, and $25 for the remaining fourteen years. That on the 15th of May, 1815, Adams assigned the lease to Thomas Gibson and Morgan Davis.

On the 15th of May, 1816, the rents were paid in such manner that from thenceforth the annual rent was to be only $25.

On the 6th of July, 1824, Gibson and Davis executed a mortgage of the term of years and their right in the premises to the Phœnix Fire Insurance Company, to secure the payment of $10,000.

On the 6th of June, 1825, they gave a further mortgage thereon to the same company for $3000.

The Insurance Company subsequently proceeded to foreclose those mortgages, and obtained the usual decree for a foreclosure and sale, on the 16th day of November, 1826. Gibson, Davis and others, were defendants in the foreclosure suit.

On the 9th of February, 1827, the Phœnix Fire Insurance Company, in consideration of $13,000, assigned the bonds and mortgages and the decree of foreclosure, to Samuel Ward, Jr. and William G. Bucknor, trustees for the above complainant, Susan Annette Gibbes.

On the 16th of September, 1830, Joseph Delacroix, who had previously bought Davis's equity of redemption in the mortgaged premises, conveyed the same to Thomas E. Tucker, in trust for the benefit of Sophia, the daughter of Delacroix and the wife of Davis, during her life, and on her death to be divided among her children.

Davis died after the execution of that deed, leaving his widow, Sophia, and eight children him surviving, one of whom was the wife of Tucker. His widow, Sophia, married John S. Jenkins,

and Tucker constituted Jenkins his agent to manage the trust estate.

On the 22d of April, 1834, prior to the death of Davis, the Rector &c. of Trinity Church, executed to Gibson and to Tucker as trustee, jointly, two leases, each for one of the lots, demised in the first lease, for terms of twenty-one years each from May 4, 1834; with covenants for two renewals of like terms, or that the lessors should pay for the buildings on the premises at the end of the first term. The annual rent for one of the lots was $450, and of the other $360, for the first term. The description of the premises in each lease concluded thus; " as the said lot of land is now held and possessed by the said parties of the second part, under and by virtue of a certain indenture of lease heretofore made by the parties of the first part to one Jane Adams, and bearing date the 19th day of April in the year 1815."

At the same date, Gibson and Tucker, the latter as trustee &c. executed their bond to Ward and Bucknor, trustees of Mrs. Gibbes, for $13,000 with interest, and their mortgage of the two new leases and the terms therein granted, as security for the bond.

Davis and wife executed an instrument under seal indorsed on the mortgage, and bearing the same date, reciting that those leases were renewals of the previous demise to Jane Adams, and declaring that the bond and mortgage last described, were executed to continue the lien of the former mortgages on the renewed leases, and Mrs. Davis thereby consented to Tucker's execution thereof as her trustee.

On the 17th of December, 1834, Ward and Bucknor pursuant to an order of the court discharging them from their trust, assigned the bond and mortgage &c. to the complainant, Thomas S. Gibbes, appointed trustee in their stead.

The bill claimed that the whole principal was due, with interest from August 7, 1843, and also $810, for ground rent to Trinity Church, and it prayed a foreclosure of the mortgage of 1834, and a sale of the premises.

The defendants Jenkins and wife, and one of the children of the latter, answered the bill, admitting all the facts charged, except as next stated.

They annexed to their answer a copy of the trust deed under

which Tucker held for Mrs. Jenkins, and insisted that the same did not authorize Tucker, with or without her consent, to execute the mortgage given in 1834. That the bond executed by Tucker was without consideration and void. That the lease to Jane Adams contained no covenant of renewal, and was absolutely determined on the 25th of March, 1834. That the mortgages to the Phoenix Insurance Company thereupon became inoperative, and ceased to be liens on the premises; and Tucker's liability to pay the debts thereby secured, also ceased. That the new leases were totally distinct from the one to Adams, and they conveyed to Gibson and Tucker a new and unincumbered estate.

Gibson put in an answer alleging usury in the advance by Mrs. Gibbes's trustees in 1827; but it is unnecessary to state the allegation.

Anthony Dey and James Lorimer Graham, two counsellors long and intimately conversant with real estate securities and investigating titles, were examined as witnesses by the complainants, to prove the usage of Trinity Church, to renew leases although there were no covenants; and the value attached to the expectation or good will of such renewals.

*D. D. Lord* and *D. Lord*, for the complainants.

*G. G. Waters* and *W. S. Johnson*, for the defendants Jenkins and others.

*D. Evans*, for Gibson.

The Assistant Vice-Chancellor.—In my view of this case, it is not necessary to examine the questions upon the execution of the mortgage by the trustees under the marriage settlement.

The complainants are clearly entitled to a decree, irrespective of that mortgage.

There was no merger of the original mortgages, in the decree for their foreclosure which the Phœnix Fire Insurance Company obtained in 1826. The lien was not diminished or impaired, but it was made more effective.

In April, 1834, the interest in the lease was vested in Gibson, and in Tucker the trustee of Mrs. Davis, subject to the lien of Mrs. Gibbes's trustees by virtue of the original mortgages and the decree. So far as Mrs. Davis and her children had any rights in the property, they were subject and subordinate to those mortgages. I say in *April*, 1834, for although the term in the old lease expired on the 25th of March, the recital in the new leases is evidence that at their date, the parties were still holding under the old demise.

The new leases bear date April 22, 1834, and are granted to the two persons who had the legal title at the termination of the former demise. An enhanced rent is reserved, but it is not pretended that there was any consideration paid. They were church leases, a continuance of which is expected as a matter of course, without any covenant of renewal. The church was not bound to renew or continue the old lease, but the good will for such continuance arising from its ownership, constituted a recognized and valuable interest.

The new leases, by reference to the holding under the expired term, show that the good will was operative in this instance. It continued the rights of the mortgagees, on precisely the same principle that it sustains the rights of Mrs. Davis and her children. If Gibson and Tucker obtained the leases as strangers would have taken them, independent of any prior or subsisting demise, the children of Mrs. Davis certainly have no interest in the premises. The description of Tucker as trustee for Mrs. D., in the leases, might possibly save her interest in the case supposed. But Gibson and Tucker could not, if they had been so disposed, obtain new leases so as to exclude any of the parties having interests in the old lease.

The law has long been settled in this court, that the new leases, though not a renewal, are a continuance of the original term, for the purpose of protecting the rights of such parties, both legal and equitable.

The case of *Phyfe* v. *Wardell*, (5 Paige, 268,) fully sustains the principle; and the leading cases from 1670 down, are there reviewed by the Chancellor. See also *Holridge* v. *Gillespie*, (2 J. C. R. 30,) where Chancellor Kent applied the same principle

to a mortgagee in possession. And for more recent applications of it to analogous cases, I refer to *Tanner* v. *Elworthy*, 4 Beavan, 487 ; *Waters* v. *Bailey*, 2 Younge and Coll. Ch. R. 219 ; and *Dickinson* v. *Codwise,* 1 Sand. Ch. R. 214, 225.

The result is, that these tenements under the new leases, continued in equity, subject to the two original mortgages, precisely as they were, under the old lease ; and the complainants are entitled to a decree by way of supplement to the former decree, for a foreclosure and sale.