JAMES L. MITCHELL, Appellant, v. CASSIUS H. REED, Respondent.

One member of a copartnership cannot, during its existence, without the
   knowledge of his copartners, take a renewal lease for his own benefit,
   of premises leased by the firm, upon which it has made valuable
   improvements, and by the joint efforts of the members made the good-
   will valuable and enhanced the rental value of the premises, and this
   although the term of the renewal lease does not begin until after the
   copartnership has expired by its own limitations.
A lease so taken by one partner in his own name enures to the benefit
   of the firm, and the partner in whose name it is taken can be required
   to account to his copartners for its value.
It is not material that the landlord would not have granted the new lease
   to the other partners or to the firm.
The authorities as to the right of trustees and partners to take renewal
   leases for their own benefit collated and discussed. (See opinion of
   DWIGHT, C.)
*Mitchell* v. *Reed* (61 Barb., 310) reversed.

(Argued May 21, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the
Supreme Court in the first judicial department affirming a
judgment in favor of defendant, entered upon decision of
the court at Special Term. (Reported below, 61 Barb.,
310.)

This action was brought to have certain leases, obtained
by the defendant during the existence of a copartnership
between him and plaintiff, for terms to commence at its
termination, of premises leased and occupied by the firm,
declared to have been taken for the partnership, and to have
it adjudged that the defendant held them as trustee for
the partnership. The facts found were substantially as
follows :

The plaintiffs were copartners, conducting and carrying
on the Hoffman House in the city of New York. The
copartnership, by its terms, expired May 1, 1871; it
owned various leases of premises which were used for the

Statement of case.

partnership business; all of the leases expired at the same time with the copartnership. The firm had spent large sums of money in making valuable improvements and in fitting up the leasehold premises so that they could be beneficially used in connection, and also in fixtures and furnishing, and by their joint efforts had built up a profitable business, and largely enhanced the rental value of the premises. In 1869 the defendant, without any notice of his intent to apply therefor, and without the knowledge of plaintiff, procured renewal leases, in his own name, of the premises for terms commencing at the termination of the partnership leases and of the partnership, which, upon discovery thereof having been made by plaintiff, defendant claimed were his property exclusively, and refused to recognize or acknowledge that the partnership or plaintiff had any right or interest therein. Other facts appear in the opinion.

The court found, as conclusions of law, that the defendant Reed was the sole owner of the leases executed to him as aforesaid, and that the plaintiff had no right, title nor interest in or to them, or either of them, and that the defendant have judgment accordingly, to which plaintiff duly excepted. Judgment was rendered accordingly.

The plaintiff commenced this action soon after he ascertained that the defendant had taken the new leases, to wit, in March, 1870, and the cause was brought to trial in February, 1871.

*A. J. Vanderpoel* and *J. E. Burrill* for the appellant. Partners are trustees for each other in respect to the partnership business and property, and are liable to each other upon the principles which bind trustees. (Lindley on Part., 495; Story on Part., §§ 174, 175; Parsons on Part., §§ 224, 226; Collyer on Part., §§ 181, 182; *Comstock* v. *Buchanan*, 57 Barb., 140.) The interest obtained in the lease by defendant enured to the benefit of his firm. (*Leach* v. *Leach*, 18 Pick., 68, 76; *Davoue* v. *Fanning*, 2 J. Ch., 252–258; *Holt* v. *Holt*, 1 Ch. Cas., 190; *Kech* v. *Sandford*, 3 Eq. Cas. Abd.,

741; *Holridye* v. *Gillespie*, 2 J. Ch., 30; *Manlove* v. *Ball*, 2 Vern., 84; *Rakestraw* v. *Brewer*, 2 P. Wms., 511; 1 Dow, 269; 1 Bro. Ch. Cas., 198; 1 B. & B., 46, 47; 2 id., 290, 298; *Horne* v. *Fonda*, 2 J. Ch., 388, 407; *Baker* v. *Whiting*, 3 Sumn., 475, 495; *Dickinson* v. *Codwise*, 1 Sandf. Ch., 214, 225; *Wood* v. *Perry*, 1 Barb. Ch., 115, 134; *Phyfe* v. *Wardell*, 5 Paige, 268; *Holridge* v. *Gillespie*, 2 J. Ch., 30; *Gibbes* v. *Jenkins*, 3 Sandf. Ch., 130; *Bennett* v. *Van Syckel*, 4 Duer, 462; *Armour* v. *Alexander*, 10 Paige, 572; *Greenlaw* v. *King*, 5 Lond. Jur., 18 [1841]; *Hudson* v. *Wallace*, 1 Rich. Eq., 2, 4, 7; *Clements* v. *Hall*, 2 De G. & J., 173; *Clegg* v. *Fishwick*, McN. & G., 294; *Leach* v. *Leach*, 18 Pick., 68; *Atchison* v. *Fair*, 3 D. & W., 525; 3 Meriv., 190, 347; *Maunsel* v. *O'Brien*, 1 Jones' T. Ex., 184, 189; *Raw* v. *Chichester*, 2 Arm., 715; *Anderson* v. *Leman*, 4 Sandf., 552; 4 Seld., 236; *Moody* v. *Matthews*, 7 Ves., 185; *Featherstonhaugh* v. *Fenwick*, 17 id., 298; *Cook* v. *Collingridge*, Jacobs, 607, 619; *Brown* v. *De Fastet*, id., 284; *Alden* v. *Fournacie*, 3 Swans., 489; *Lafleur* v. *Naglee*, 9 Cal., 662; *Lacy* v. *Hale*, 37 Penn., 360; *Pickering* v. *Vowles*, 1 Bro. Ch., 197; *Colegrave* v. *Manby*, 6 Madd., 72; *Rakestraw* v. *Brewer*, 2 P. Wms., 510; *Luckin* v. *Rushworth*, 2 Ch. R., 116; *Darrell* v. *Whitchot*, id., 59; *Huson* v. *Wallace*, 1 Rich. Eq., 2–7.) The right of the party in whose favor the trust is declared to have the benefit of the renewal does not depend upon the fact whether by custom, courtesy or contract there was a right of a renewal. (*Holbridge* v. *Gillespie*, 2 J. Ch., 30; *Clegg* v. *Edmonston*, 8 De G., M. & G., 787; *Luckin* v. *Rushworth*, 2 Ch. R., 113; *Darrell* v. *Whitchot*, id., 59; *Huson* v. *Wallace*, 1 Rich. Eq., 2–7; *Clements* v. *Hall*, 2 De G. & J., 173; *Clegg* v. *Fishwick*, 1 McN. & G., 294; *Phyfe* v. *Wardell*, 6 Paige, 268; *Bennett* v. *Van Syckel*, 4 Duer, 462.) There is no force in the objection that the new leases contain covenants against assignments. (*Alden* v. *Fournacie*, 3 Swanst., 489; Platt on Cov., 415; Comyn on Landl., 239; Taylor on Landl., 408.)

*John K. Porter* and *Willard O. Bartlett* for the respondents. The existence of a fiduciary relation creates no disability to deal in respect to property not embraced in the trust. (*Knight* v. *Majoribanks*, 2 McN. & G., 10; *Murray* v. *Vanderbilt*, 39 Barb., 156, 157; *Wheeler* v. *Sage*, 1 Wall., 518.) The leases constituted no part of the good-will of the business of the partners. (*Van Dyke* v. *Jackson*, 1 E. D. S., 419; *Musselman's Appeal*, 62 Penn., 83; *Phillips* v. *Reeder*, 18 N. J. Eq., 95; *Atchison* v. *Fair*, 3 Dr. & W., 525; *Lee* v. *Vernon*, 1 B. & B., 48; *Maunsell* v. *O'Brien*, 1 Jones' J. Ex., 184, 189; 5 Bro. P. C., 10; 17 Ves., 298; 51 N. Y., 357, 362, 363; *Anderson* v. *Lemon*, 4 Seld., 236; 4 Sandf., 552.)

EARL, C. The relation of partners with each other is one of trust and confidence. Each is the general agent of the firm, and is bound to act in entire good faith to the other. The functions, rights and duties of partners in a great measure comprehend those both of trustees and agents, and the general rules of law applicable to such characters are applicable to them. Neither partner can, in the business and affairs of the firm, clandestinely stipulate for a private advantage to himself; he can neither sell to nor buy from the firm at a concealed profit to himself. Every advantage which he can obtain in the business of the firm must enure to the benefit of the firm. These principles are elementary, and are not contested. (Story, §§ 174, 175; Collyer, 181, 182.) It has been frequently held that when one partner obtains the renewal of a partnership lease secretly, in his own name, he will be held a trustee for the firm as to the renewed lease. It is conceded that this is the rule where the partnership is for a limited term, and either partner takes a lease commencing within the term; but the contention is that the rule does not apply where the lease thus taken is for a term to commence after the expiration of the partnership by its own limitation, and whether this contention is well founded, is one of the grave questions to be determined upon this appeal.

It is not necessary, in maintaining the right of the plaintiff

in this case, to. hold that in all cases a lease thus taken shall enure to the benefit of the firm, but whether, upon the facts of this case, these leases ought to enure to the benefit of this firm. I will briefly allude to some of the prominent features of this case. These parties had been partners for some years; they were equal in dignity, although their interests differed. The plaintiff was not a mere subordinate in the firm, but so far as appears, just as important and efficient in its affairs as the defendant. They procured the exclusive control of the leases of the property, to terminate May 1, 1871, and their partnership was to terminate on the same day. They expended many thousand dollars in fitting up the premises, a portion thereof after the new leases were obtained, and they expended a very large sum in furnishing them. By their joint skill and influence they built up a very large and profitable business, which largely enhanced the rental value of the premises. More than two years before the expiration of their leases and of their partnership, the defendant secretly procured, at an increased rent, in his own name, the new leases which are of great value. Although the plaintiff was in daily intercourse with the defendant, he knew nothing of these leases for about a year after they had been obtained. There is no proof that the lessors would not have leased to the firm as readily as to the defendant alone. The permanent fixtures, by the terms of the leases at their expiration, belonged to the lessors. But the movable fixtures and furniture were worth vastly more to be kept and used in the hotel than to be removed elsewhere. Upon these facts I can entertain no doubt, both upon principle and authority, that these leases should be held to enure to the benefit of the firm. If the defendant can hold these leases, he could have held them if he had secretly obtained them immediately after the partnership commenced, and had concealed the fact from the plaintiff during the whole term. There would thus have been, during the whole term, in making permanent improvements and in furnishing the hotel, a conflict between his duty to the firm, and his self-interest. Large investments and extensive

furnishing would add to the value of his lease, and defend
ant would be under constant temptation to make them.
While he might not yield to the temptation, and while proof
might show that he had not yielded, the law will not allow a
trustee thus situated to be thus tempted, and therefore dis-
ables him from making a contract for his own benefit. (*Ter-
williger* v. *Brown*, 44 N. Y., 237, and cases cited.) It matters
not that the court at Special Term found upon the evidence
that the improvements were judicious and prudent for the
purposes of the old term. The plaintiff was entitled to the
unbiased judgment of the defendant as to such improvements,
uninfluenced by his private and separate interest. But,
further, the parties owned together a large amount of hotel
property in the form of furniture and supplies, considerably
exceeding, as I infer, $100,000 in value. Assuming that the
partnership was not to be continued after the 1st day of
May, 1871, this property was to be sold, or in some way dis-
posed of for the benefit of the firm, and each partner owed a
duty to the firm to dispose of it to the best advantage.
Neither could, without the violation of his duty to the firm,
place the property in such a situation that it would be sac-
rificed, or that he could purchase it for his separate benefit,
at a great profit. Much of this property, such as mirrors,
carpets, etc., was fitted for use in this hotel, and it is quite
manifest that all of it would sell better with a lease of the
hotel, than it would to be removed therefrom. It is clear
that one or both of these parties could obtain advantageous
leases of the hotel for a term of years, and hence, if the par-
ties had determined to dissolve their partnership, it would
have been a measure of ordinary prudence to have obtained
the leases and transferred the property with the leases as the
only mode of realizing its value. This was defeated by the
act of the defendant, if he is allowed to hold these leases, and
thus place himself in a position where the property must be
largely sacrificed or purchased by himself at a great advan-
tage. This the law will not tolerate. The language of Lord
Eldon, in *Featherstonhaugh* v. *Fenwick* (17 Ves., 311), a case

in many respects resembling this, is quite in point. He says: "If they (the defendants) can hold this lease and the partner-ship stock is not brought to sale, they are by no means on equal terms. The stock cannot be of equal value to the plaintiff, who was to carry it away and seek some place in which to put it, as to the defendants who were to continue it in the place where the trade was already established, and if the stock was sold the same construction would give them an advantage over the bidders. In effect they would have secured the good-will of the trade to themselves in exclusion of their partner." For these reasons, independently of the consideration that the leases themselves had a value to which the firm was entitled upon other grounds and upon authori-ties to be hereafter cited, the plaintiff, who commenced his suit about one year before the term of the partnership expired, was, upon undisputed principles and authorities applicable to all trustees and persons holding a fiduciary relation to others, entitled to the relief he prayed for.

It has long been settled by adjudications, that generally when one partner obtains the renewal of a partnership lease secretly, in his own name, he will be held a trustee for the firm, in the renewed lease, and when the rule is otherwise applicable, it matters not that the new lease is upon different terms from the old one, or for a larger rent, or that the lessor would not have leased to the firm. The law recognizes the renewal of a lease as a reasonable expectancy of the tenants in possession, and in many cases protects this expectancy as a thing of value. I will briefly notice a few of the cases upon this subject. In *Holridge* v. *Gillespie* (2 J. Ch., 30), Chancellor KENT says: "It is a general principle pervading the cases, that if a mortgagee, executor, trustee, tenant for life, etc., who has a limited interest, gets an advantage by being in possession, ' or behind the back ' of the party inter-ested in the subject, or by some contrivance or fraud, he shall not retain the same for his own benefit, but hold it in trust." That was a case where a lease was assigned as security, and the assignee surrendered it to the lessor and took a new lease

for an extended term of years. In *Phyfe* v. *Wardell* (5 Paige, 268), Chancellor WALWORTH lays down the general rule, "that if a person who has a particular or special interest in a lease, obtains a renewal thereof from the circumstance of his being in possession as tenant, or from having such particular interest, the renewed lease is in equity considered as a mere continuance of the original lease, subject to the additional charges upon the renewal, for the purpose of protecting the equitable rights of all parties who had any interest, either legal or equitable, in the old lease." That case was followed in *Gibbes* v. *Jenkins* (3 Sand. Ch., 131), where it was held that one purchasing a leasehold which was subject to a mortgage and contained no covenant of renewal, could not escape the lien of the mortgage by suffering the lease to expire and afterward obtaining a new lease of the premises; that the new lease in such case, though not a renewal, was a continuance of the original lease for the purpose of protecting the rights of the parties interested in the original lease, both legal and equitable. In these two cases church leases were involved, and some stress was laid upon that fact, as the continuance of such leases was expected as a matter of course, without any covenant of renewal. But the fact that they were church leases could make no real difference in the principle upon which the decisions were based. The fact that a renewal or continuance of a lease is more or less certain, can make no difference with the principle; that springs from the fact that the party obtained the new lease from the position he occupied, being in possession and having the good-will which accompanies that, or being connected with the old lease in some way, and thus enabled to take an inequitable advantage of other parties also interested, to whom he owed some duty.

In *Struthers* v. *Pearce* (51 N. Y., 357), it was held that when, during the existence of a continuing copartnership of undetermined duration, three of four copartners, without the knowledge of the other, obtained a new lease in their own names, of premises leased and used by the firm, the same

became partnership property, and upon dissolution the other partner was entitled to his proportion of the value. In that case the defendants intended to dissolve the copartnership as early as August, and gave written notice on the 18th day of September, 1865, for the dissolution on the thirty-first day of December, following. On the eleventh day of September, the defendants secretly obtained a new lease, in their own names, of the same premises, for a term of five years, to commence May 1, 1866. I think that case is fairly decisive of this. It is true that a period for a dissolution of the partnership had not been fixed when the new lease was taken, but negotiations were pending for its dissolution, and a few days after the new lease was taken, a time for its dissolution was fixed by a written notice. But it can make no difference that the partnership might have been continued by the parties until after the new term commenced. So it might here, if the parties had so willed. There they had the right to dissolve it at any time. The principle which lies at the foundation of the decision of that and all similar cases must be the one above stated, that the defendants in possession took advantage of their position to procure the new lease, and thus deprived the plaintiff of a benefit to which he, with them, was equally entitled. In a note to *Moody* v. *Matthews* (17 Ves., 185 [Sumner's ed.]), the learned editor says, as a deduction from adjudged cases, that " with a possible exception in favor of a *bona fide* purchaser, it seems to be an universal rule that no one who is in possession of a lease or a particular interest in a lease which lease is affected with any sort of equity in behalf of third persons, can renew the same for his own use only ; but such renewal must be construed as a graft upon the old stock." In *Clements* v. *Hall* (2 De G. & J., 173), where one partner in a mining partnership died in 1847, and the surviving partner thereafter worked the mine without a new lease thereof, claiming to do so for his own benefit, until 1850, when the lessor gave him notice to quit in March, 1851, when he entered into new negotiations with the lessor for a new lease, and obtained one of the

greater part of the mine, on terms much more burdensome than those of the old tenancy, it was held that those who claimed under the will of the deceased partner were entitled to a share of the benefit of the new lease. In *Clegg* v. *Fish-wick* (1 McN. & G., 294), one of several partners working a mine under a lease died, and the firm business was thereafter carried on for several years between the surviving partners and the plaintiff, widow of the deceased partner. Finally, the old lease expired, and some of the partners took a new lease of the mine without the privity of the plaintiff. It was held that the estate of the deceased partner was interested in the new lease. The lord chancellor says: " The old lease was the foundation of the new lease, the tenant's right of renewal arising out of the old lease giving the partners the benefit of this new lease; at least the law assumes it to be so. Without saying at all what circumstances there may be to interfere with that ordinary right, we know that the rule of equity is that parties interested jointly with others in a lease, cannot take to themselves the benefit of a renewal to the exclusion of the other parties interested with them." In *Clegg* v. *Edmondson* (8 De G., McN. & G., 787), the managing partners of a mining partnership at will gave notice of dissolution to the rest, and intimated their intention, after the dissolution, to apply for a new lease for their own exclusive benefit, and did so and obtained a lease, and it was held to enure to the benefit of the partnership. See, also, the leading cases of *Featherstonhaugh* v. *Fenwick* (17 Ves., 298) and *Keech* v. *Sandford* (2 Eq. Cas. Abdg., 741), and notes to the latter case in 1 Leading Cases in Equity, 32, where the whole doctrine is discussed, and conclusion reached in harmony with the views above expressed. I therefore conclude that it makes no difference that these leases were obtained for a term to commence after the partnership, by its own limitation, was to terminate. I can find no authority holding that it does, and there is no principle sustaining the distinction claimed. The defendant was in possession as a member of the firm, and the firm owned the good-will. for

a renewal, which ordinarily attaches to the possession. By his occupancy, and the payment of the rent, he was brought into intimate relations with the lessors; he became well acquainted with the value of the premises, and he took advantage of his position, during the partnership, secretly to obtain the new leases. He must hold them for the firm.

I am therefore of opinion that the judgment should be reversed, and new trial granted, costs to abide the event.

DWIGHT, C. The question at issue in this case is, whether a member of a commercial partnership, during its continuance, and without the consent or knowledge of his associate, can take a renewal of a lease of property used in the business, in his own name and for his own benefit, the partnership having a definite termination, and the renewal lease commencing at its expiration.

The general power of a partner to take a lease of such property for his own benefit, must be considered as settled in this court by the decision in *Struthers* v. *Pearce* (51 N. Y., 357). In that case the lease was taken during the exististence of the partnership, which was of indefinite duration. No notice had been given of its termination when this lease was taken. The facts presented the case of a lease taken during the existence of the partnership, and to begin in enjoyment during that time. The court expressly distinguished it from the present case, which had then been decided in the Supreme Court. (P. 362.)

The only point now open for discussion is, whether the fact that when Read took the renewal of the lease the partnership had a precise limit, and was to terminate before the lease commenced, is material. Before considering that point, it may fairly be claimed that this case comes within the precise decision in *Struthers* v. *Pearce*, on a ground not mentioned in the argument. Read, though his lease was not to commence in possession until after the expiration of the original lease, acquired an immediate interest by way of an *interesse termini*. This precise point was decided in *Smith*

v. *Day* (2 M. & W., 684, 699 ; 2 Platt on Leases, 60). This, it is true, is not an estate, but a right. Still it is the subject of grant before entry. (1 Steph. Com., 268 ; Burton's Real Property, 18, pl. 61 ; 2 Crabb do., 227.) If the partnership had acquired this *interesse termini*, it might, as the facts of the case show, have been disposed of for a large sum of money. If the doctrine of *Struthers* v. *Pearce* establishes that the partner cannot acquire a lease in his own behalf, to commence while the partnership lasts, by parity of reasoning he cannot obtain an *interesse termini* under the same circumstances.

If, however, this view is not correct, the main question must be disposed of. Can a partner take a lease for himself, to commence in possession after the partnership has expired ? In order to settle this point it is essential to give the subject a more full examination than was requisite in *Struthers* v. *Pearce*, and to consider more at large the principles on which this branch of the law rests. It grows out of the relation of trust and confidence between partners, and is a branch of the rule that a trustee cannot profit from the estate for which he acts. It largely has its roots in a principle of public policy, as shown in one of the early decisions. (*Keech* v. *Sandford*, Sel. Ca. in Chan., 61 ; *Griffin* v. *Griffin*, 1 S. & L., 352, per Lord REDESDALE.) The general rule is so well settled that it would be a waste of time to refer to authorities. The text-writers on the law of partnership, without exception, assert the applicability of this rule of law to partnership transactions. (Lindley on Part., 495 ; Story on Part., §§ 174, 175 ; Parsons on Part., §§ 224–226 ; Collyer on Part., §§ 281, 282.)

The special rule that a trustee cannot take, for his own benefit, a renewal of a lease which he holds in trust, is enforced in a great number of cases. The principle on which it rests is nowhere more fully or clearly stated than in the argument of Sir FRANCIS HARGRAVE in *Lee* v. *Vernon* (5 Brown's Parl. Cases, 10 [Eng. ed., 1803]). Although the passage is somewhat long, it is quoted as shedding much light on a subject, the principle of which has, in course of time,

become somewhat obscure.  He said: "It has long been an established practice to consider those who are in possession of lands under leases for lives or years as having an interest beyond the subsisting term, and this interest is usually termed the tenant right of renewal, which, though, according to language and ideas strictly legal, is not any certain, or even contingent estate, but only a *chance*, there being no means of compelling a renewal, yet is so adverted to in all transactions relative to leasehold property, that it influences the price in sales, and is often an inducement to accept of it in mortgages and settlements.  This observation is more especially applicable to leases from the crown, the church, colleges, or other corporations, and, indeed, from private persons, where the tenure is of ancient date.  *  *  *  This 'tenant right' of renewal, as it is termed, however imperfect or contingent in its nature, being still a thing of value, ought to be protected by the courts of justice, and when those who are entitled to its incidental advantages, whether by purchase or other derivation, are disappointed of them by fraud, imposition, misrepresentation, or unfair practice of any kind, it is fit and reasonable that this injury should have redress.  Accordingly, courts of equity have so far recognized the tenant right of renewal as frequently to interpose in its favor by decreeing that new or *reversionary* leases gained by *means* or *supposition* of the tenant right of renewal, should be for the benefit of the same persons as were interested in the ancient lease, and those who procured such new leases, and were legally possessed of them, should be trustees for that purpose. There is a great variety of authorities on this head, but the cases which have hitherto occurred have been principally of two kinds, some being cases of persons not having any beneficial interest in the old lease, as guardians and executors, and others being cases of persons having only partial and limited interests, as tenants for life, mortgagees and mortgagors, and in cases of both descriptions, those who have procured a new lease in such situations have been uniformly declared trustees for the persons beneficially interested in the

ancient lease, either wholly or in part, according to the particular circumstances, the court ever presuming that the new lease was obtained by means of a *connection with* and a *reference to* the interest in the ancient one, without in the least regarding whether the persons renewing intended to act as trustees, or for their own emolument."

From this exposition, so luminous and judicial in its tone, which is fully sustained by the authorities, it is clear that the rule under consideration is not confined to crown, church or college leases, but embraces those of every kind. The same principle appertains to all. The *cestui que trust* has a right to the *chance* of renewal. Though this is termed a " tenant right " as between the lessee and the landlord, that is a mere phrase. It is a hope, an expectation, rather than a right. Such as it is, the trustee shall not take it to himself, but if it results in any substantial benefit he shall hold it for his beneficiary. (*Phyfe* v. *Wardell,* 5 Paige, 268; *Bennett* v. *Van Syckel,* 4 Duer, 162; *Gibbes* v. *Jenkins,* 3 Sand. Ch., 130; *Davoue* v. *Fanning,* 2 J. Ch., 252; *Armour* v. *Alexander,* 10 Paige, 572; *Dickinson* v. *Codwise,* 1 Sand. Ch., 226.) Some of these were instances of church or other corporation leases, and others were not. In no case has it been held that the rule is confined to these, as it certainly cannot be on principle.

The whole doctrine is extended to the case of partners in *Featherstonhaugh* v. *Fenwick* (17 Ves., 298); *Clegg* v. *Edmondson* (8 De G., M. & G., 787); *Clements* v. *Hall* (2 De G. & J., 173); *Clegg* v. *Fishwick* (1 McN. & G., 294); *Struthers* v. *Pierce* (*supra*).

The principle cannot depend on the fact whether the lease is made to begin during the continuance of the partnership or at its close. Once admit the general principle, and it must result in this. *While the relation lasts,* one partner cannot clandestinely and exclusively profit by the trust relation. There may, perhaps, be cases where the act is openly done by the trustee and acquiesced in by the beneficiary that would admit of different considerations. It is not now necessary to decide that in no case can a partner take a lease for his own benefit. What

is now to be decided is, whether he can do so behind the back of his associate and without his consent. The bad consequences of making any such distinction as the defendant seeks to maintain in the present case is easily shown by a reference to the relation of a guardian and his ward. A guardian, we may suppose, holds a lease in his official character which is to expire at his ward's majority. While the *relation* of guardian and ward exists, he takes a lease to himself to commence at the termination of the existing lease. Could that be sustained? Has he not profited by the trust relation? When he takes a lease to himself, can a tenable distinction be taken between one commencing immediately, and one beginning at a future day, even though that day be postponed until the trust relation expires? The sound rule is, that he cannot make any profit to himself from a secret transaction *initiated* while the relation of trustee and *cestui que trust* exists, no matter when it springs into active operation. It must never be forgotten that, on general principles of the law of contracts, his *right* to the lease, as between him and his landlord, commences as soon as he has made his agreement for it. This is an immediate subject of sale, and if the trustee can hold it, he will be allowed to profit by the trust relation which, as has been shown, he cannot do. The *cestui que trust* may accordingly say: "All the value of this lease you hold in trust for me Grant that it is not yet an estate but only a right — make it over to me in the condition in which you hold it." While no case has been found presenting the precise facts in the case at bar, the principles which should govern it may be derived from the result in *Featherstonhaugh* v. *Fenwick* (*supra*); *Clegg* v. *Edmondson* and *Clegg* v. *Fishwick* (*supra*).

In the first of these cases, the partnership was for an indefinite period, and might be dissolved at the pleasure of either party, on notice. It was dissolved November 22d, 1804, the day on which the lease expired. Two of the partners, without communication with the plaintiff, had applied for a renewal of the lease, and obtained it before

giving notice of the dissolution of the partnership. The new lease was to run for eight years from the expiration of the old one. On October nineteenth, they gave notice to dissolve the partnership. The court held that the new lease belonged to the partnership, and was assets of the firm. Much stress was laid on the fact that the transaction was a clandestine one, and the court thought if notice had been given the case might have admitted of different consideration. The case is not in all respects parallel in its facts with the case at bar, for at the time the lease was taken, the period for the termination of the partnership had not been fixed, and only became subsequently ascertained by notice.

In the case of *Clegg* v. *Edmondson*, which was also an instance of a partnership to be dissolved at the pleasure of the parties, the effect of a notice to dissolve, preceding the execution of the renewal lease, came before the court. In that case, five managing partners had determined to dissolve their partnership, and had communicated their intent in June, 1846, and their determination to take a renewal to themselves. To this two other partners objected, claiming that the renewal should be for the benefit of all. Formal notice of dissolution was given in July, to take effect on September thirtieth. On the succeeding eleventh of December, a new lease was executed for twenty-one years to the managing partners, to take effect from September 29, 1846. The defendants endeavored to distinguish this case from that of *Featherstonhaugh* v. *Fenwick*, on the ground of the openness and fairness of the transaction. The court, however, held that the mere communication of an intent on the part of the managing partners to apply for a lease for their own benefit was not sufficient to give them an exclusive right to it. This case, on the point of time, is stronger than the case at bar, for the new lease was taken after the partnership was dissolved, though some stress was laid upon a point which does not appear here, that the act was that of managing partners.

On principle, in many cases it is of but little consequence

whether the partnership is dissolved or not before the renewal, since, if the former partners become tenants in common, the result is the same. (*Clements* v. *Hall*, 2 De G. & J., 173; *Horne* v. *Fonda*, 5 J. Ch., 388; *Baker* v. *Whiting*, 3 Sumn., 475, 495.) The case of *Clegg* v. *Fishwick* is still nearer to the one under consideration. In this instance, the renewal lease was obtained during the existence of the partnership, and the lease commenced at its expiration. This lease was declared to be held in trust for the firm.

Without further collation of authorities, the fair deductions from the principles on which they rest may be summed up as follows:

1. A trustee holding a lease, whether corporate or individual, holds the renewal as a trustee, and as he held the original lease.

2. This does not depend upon any right which the *cestui que trust* has to the renewal, but upon the theory that the new lease is, in technical terms, a " graft " upon the old one; and that the trustee " had a facility," by means of his relation to the estate, for obtaining the renewal, from which he shall not personally profit.

3. This doctrine extends to commercial partnerships, and one of several partners cannot, while a partnership continues, take a renewal lease clandestinely, or " behind the backs " of his associates, for his own benefit. It is not material that the landlord would not have granted the new lease to the other partners, or to the firm.

4. It is of no consequence whether the partnership is for a definite or an indefinite period. The disability to take the lease for individual profit grows out of the partnership relation. While that lasts, the renewal cannot be taken for individual purposes, even though the lease does not commence until after the expiration of the partnership.

5. It cannot necessarily be assumed that the renewal can be taken by an individual member of the firm, even after dissolution. The former partners may still be tenants in common;

or there may be other reasons, of a fiduciary nature, why the transaction cannot be entered into.

The authorities cited on behalf of the defendant do not disprove these conclusions.

In *Lee* v. *Vernon* (*supra*), there was no trust. The question arose between a stranger to the lease and the claimant. The point made by the plaintiff was, that the " tenant right " of renewal had become strictly a right, so that even a stranger could not take a renewal and hold it for his own benefit. It was an extraordinary claim, having no foundation in principle, and was rejected.

In *Van Dyke* v. *Jackson* (1 E. D. Smith, 419), the party had made a special contract with his partner to abandon the *place* where the business was carried on. The case turned on the special contract to leave the business in the hands of the other party.

*Musselman's Appeal* (62 Penn. St., 81), does not raise the question. It was not sought there to charge a partner with the value of a renewal lease which he had taken to himself during the existence of the partnership, but rather with that of the good-will as it existed after the partnership was dissolved. In fact, the place where the business was carried on was sold for the benefit of the firm, and it was held, in substance, that the good-will had been realized in the enhanced value of the property sold.

It is said, in the present case, that Read was not authorized, by the articles of partnership, to contract for Mitchell after the expiration of the firm; and that, therefore, Mitchell cannot take advantage from the renewal lease. The answer is, that he made the contract while the firm was in existence, and Mitchell may adopt and ratify it. The objection also proves too much, as it applies to all the cases in which the partner, acting clandestinely, has been declared a trustee.

In *Phillips* v. *Reeder* (18 N. J. Eq., 95), one of the partners, R., prior to the partnership, owned the lease, exclusively, of certain stone quarries. He entered into a partnership with P. for three years, and so much longer as R. should continue

lessee of the quarries. In the lease, there was a covenant of renewal at the option of R. He having declined to renew, it was held that the partnership expired ;. or, in other words, that R. was under no obligation to renew, and thus to continue the partnership. There could be no pretence in this case that the doctrine under review applied, since the original lease did not itself belong to the firm. It was the private property of one of the partners, which he was under no obligation to preserve for the firm's benefit.

In *Achenson* v. *Fair* (3 Dr. & War., 512), the point decided was, that the doctrine was not to be extended to *additional* lands purchased by trustee ; in other words, the rule was fully recognized, but nothing was to be governed by it except that which could be fairly regarded as a graft on the former lease.

In *Nesbitt* v. *Tredennick* (1 Ball & B., 29, 48), a mortgagee, not in possession, obtained a renewal, the original lease having been forfeited, both in law and equity, for non-payment of rent. Here there was no violation of trust. The rule under discussion was fully recognized, but its application to the existing case denied. The court said : " In all the cases upon this subject, either the party by being in possession obtained the renewal, or it was done behind the back, or by some contrivance in fraud of those who were interested in the old lease; and there was either a remnant of the old lease, or a tenant right of renewal on which a new lease could be engrafted." There could be no plainer recognition of the general principle maintained by the plaintiff.

In *Maunsell* v. *O'Brien* (1 Jones [Exch.], 184), the facts were, that there was an under-tenant who took a new lease from the original landlord without advising his own immediate landlord. The court held that there was no fiduciary relation between these parties. The principle was fully admitted, but the facts did not raise a case for its application. JOY, C. B., said : " It is admitted that there is no authority which can be produced where such a lease as the present has been declared to be a trust; and that we are now called upon

*to go further than any decision has ever gone before*, and to make an authority for future decisions. We are called upon to do this on what are called the principles of a court of equity; namely, that where a person is clothed with a fiduciary character, and in that character becomes possessed of an interest in land, held under a determinable lease, any acquisition by him of a new interest in those lands is a continuation of the old lease, and a " graft " upon it. This, however, is the first time that I have heard it asserted that if an under-tenant obtains a lease of his lands from the head landlord without consulting his own immediate landlord that lease is a trust for his immediate landlord, because that person had a tenant right of renewal. *But there is no fiduciary character imposed on an under-tenant,* in reference to his landlord, by the creation of the relation of landlord and tenant which would entitle the plaintiff to the relief he seeks, on the ground of his having a tenant right of renewal. A *cestui que trust* is entitled to the benefit of a new lease, obtained by a trustee by means of a tenant right of renewal, which the latter became entitled to as trustee, but there is no such person in the present case." This language plainly shows that the court was but following in the wake of *Lee* v. *Vernon ;* and holding that the doctrine of tenant right of renewal, and that the new lease is a graft on the old stock, are not to be extended to strangers, but confined to persons acting in a fiduciary character.

The only other case that will be noticed is *Anderson* v. *Lemon* (8 N. Y., 236), which holds, that one partner may in good faith purchase and hold, for his own use, the *reversion* of real estate occupied by the copartnership, under a lease for years, with the qualification that if he secretly makes such purchase in his own name while the other partner with his concurrence is negotiating with the owner to obtain the property for the use of the firm, the purchaser will be declared a trustee.

This decision carefully admits the general doctrine, but considers it not applicable to the case where one of the partners purchases in good faith the landlord's interest as

distinguished from taking a new lease. It is simply a case of an exception to a general rule. It can scarcely be considered, as a decision in favor of a partner's right to purchase since he was under the circumstances a trustee. Should the question be distinctly presented, it will deserve consideration whether the view in *Anderson* v. *Lemon*, that one partner may even in good faith buy the reversion for himself, is correct. There is great cogency in the remarks of Sir WILLIAM GRANT, that the partner may in this way intercept and cut off the chance of future renewals and consequently make use of his situation to prejudice the interests of his associates. (*Randall* v. *Russell*, 3 Meriv., 190, 197.) There appears to be no direct decision allowing the partner thus to purchase, and the right to do so is treated as doubtful by approved text writers. (1 Lead. Cas. Eq. [3d Am. ed.], p. 43, 44, marg. paging).

The application of the principles discussed in this opinion to the case at bar is obvious.

The plaintiff and defendant were owners, as partners, of a lease of premises in the city of New York, on which a hotel business was carried on yielding a large profit. These consisted of Nos. 1111, 1113, 1115 Broadway, and Nos. 1 and 3 West Twenty-fourth street. The leases of the Twenty-fourth street property were made directly to them, November 17th, 1866. The Broadway property, through a series of transactions not necessary to be detailed, became vested, according to the fair construction of the various agreements respecting it, in the partnership. The leases expired on the same day, May 1st, 1871, when the partnership terminated. While the partnership continued, both parties thought it necessary to provide a place for a bar room, and with this view the premises No. 3 West Twenty-fourth street were connected with the rear of the premises fronting on Broadway, known as the "Hoffman House," and the first story fitted up and used for that purpose. A considerable expenditure was made with this view, and large profits were realized, as the course taken was judicious. While all of the leases owned by the firm were still in exist-

ence, viz., April 20th, 1869, and on January 21st, 1869, the owners of the hotel property made leases to the defend- ant, to commence from May 1st, 1871, and to continue as to part of the property for five years, and as to another portion for ten years from that date, at specified rents. The leases were obtained by Read without notice to the plaintiff, and he now claims that they are his exclusive property. They are of great value and the hotel at the commencement of the action March, 1870, was still in operation. The furniture, fixtures, stock, etc., were valuable and the business carried on was profitable.

The case has in it every element of the equity which has been already considered. The partnership is undisputed ; the leases were in existence, when the renewal was made. The act of renewal was clandestine, or occurred " behind the back " of the plaintiff. It took place while the partnership was in force. The right to renewal was immediate and vested in Read during the partnership's continuance. The property belonging to the firm, and which will be prejudiced by the prospect of disposing of it at a sacrifice at the close of the existing lease, is large and valuable.

Common justice and a due regard to rules of public policy demand that the renewal lease should be declared to belong to the firm, and that the defendant should be required to account to the plaintiff for his portion of its value. The clauses in the leases to Read that there shall be no assignment without the consent of the landlord do not stand in the way of the plaintiff's relief. This does not consist in an assign- ment in the ordinary sense of that term. On the con- trary, the ground of relief is that the defendant acted inequitably when he entered into the contract; that he must therefore be considered as a trustee, while the assignment to the firm simply follows as an incident to the giving complete effect to the trust relation declared by the court to exist between the parties. (*Featherstonhaugh* v. *Fenwick, supra.*)

The judgment must be reversed, and a new trial ordered.

All concur ; Reynolds, C., not sitting.

Judgment reversed.