JAMES SPEARS, Respondent, v. EBEN WILLIS, Appellant.

*Agreement for the assignment of a patent and the formation of a copartnership — dissolution of the partnership — accounting — equitable rights enforced — contract unlawfully destroyed by ·one of the partners — a new contract made by him personally inures to the partnership.*

In 1879, one Willis, being the owner of a patent for an improvement in " sap-spouts," agreed orally with James Spears to sell him an undivided half interest · in the patent for a certain sum, and that they, as copartners, should enter into the business of making and selling sap-spouts under the patent. They entered into such partnership and carried on the business under the firm name until 1887, when the firm entered into a contract with a third party by which the latter was given the exclusive right to sell the sap-spouts to the public in considera-tion of his buying from the firm a certain number each year. The spouts made by the firm were not in strict conformity with the specifications of the patent.

In the fall of 1887 Spears removed from the town where the business was carried on, and Willis then stated to him that the business was not enough to divide, but that he must buy out the business or sell, and thereupon tore the firm name from the contract for the exclusive sale of the spouts, and notified the other party thereto to change the account to his (Willis') name, which was done and remittances under this contract were thereafter made to Willis per-sonally, and he refused to account to Spears therefor.

Spears thereupon sued Willis, demanding an assignment of an undivided half interest in the patent, a dissolution of the partnership and an accounting. It appeared that Spears had never paid the purchase price for his interest in the patent and that Willis had never demanded payment, but Willis' answer admitted the sale of the undivided half interest in the patent to Spears and the formation of the partnership.

*Held*, that aside from such admissions, by the verbal agreement between the parties, under which they had as copartners carried on the business for eight years, treating the patent as partnership property, and under all the circumstances of the case, the plaintiff acquired an equitable title or interest in the invention which equity would protect;

That the fact that the partners, who, under the partnership agreement, were to manufacture sap-spouts under the patent, in fact made and sold spouts varying from the specifications of the patent, did not interfere with the plaintiff's right to recover his share of the partnership profits;

That the defendant should account for all sales, under the contract for the exclusive sale of the spouts, down to the day of the entry of judgment;

That as he had unlawfully assumed to destroy that contract and to make a new one for his own benefit, he should be deemed to hold it for the benefit of the firm, and that this was so, notwithstanding the fact that the spouts furnished since the defendant's attempted destruction of said contract, although in substance in the form and pattern used immediately prior to the making of that contract, were not exactly the same (Herrick, J., dissenting).

Appeal by the defendant, Eben Willis, from an interlocutory judgment of the Supreme Court, entered upon the report of a referee in the office of the clerk of St. Lawrence county on the 6th day of September, 1892, requiring an accounting of the defendant to the plaintiff and appointing a receiver of the firm of Willis & Spears, and dissolving said firm.

The action was brought to compel an assignment from the defendant to the plaintiff of an undivided half interest in letters patent No. 189,330 of the United States, dated April 10, 1877, for an improvement in sap-spouts; and to obtain a dissolution of the partnership existing between the parties under the firm name of Willis & Spears, and an accounting, with a sale of the firm property, including the said letters patent, and a division of the surplus proceeds between the parties equally.

*Theodore H. Swift*, for the appellant.

*L. P. Hale*, for the respondent.

Putnam, J.:

In the autumn of 1879, defendant being the owner of letters patent No. 189,330 for an improvement in "sap-spouts," the parties entered into an oral agreement that defendant should sell to plaintiff an undivided half interest in said patent for $500, and that plaintiff

and defendant, as copartners, should enter into the business of manufacturing and selling sap-spouts made under said letters patent. Thereafter they entered into said partnership and carried on said business under the name of Willis & Spears until 1887. The referee finds (and the evidence seems to sustain his findings) as follows, viz. :

"5th. That on or about the 19th day of January, 1887, Willis & Spears entered into a contract with Charles Millar & Son, of which the following is a copy :

"'UTICA, N. Y., *Jan.* 19, 1887.

"'CHARLES MILLAR & SON :

"'GENTLEMEN — We do hereby give you the exclusive sale for the Willis Sap-spout for the United States, during the lifetime of the patent, about eight years, in consideration of your buying outright the spouts we now have on hand, paying for them $14 per M for the large size or No. 1, $10 per M for the small size or No. 2 and additional spouts required for this year are to be paid for at the same rate, and also in consideration of your buying not less than one hundred M. spouts each year after this. The price of spouts to be advanced or reduced in case of an increase or diminished cost of manufacturing them, and you are to fix the price to jobbers and the retail dealers yourselves in proportion. Terms of payment, half March 15th, and half May 15, of each year.

"'(Signed.)            WILLIS & SPEARS.

"'UTICA, N. Y., *Jan.* 19, 1887.

"'Messrs. WILLIS & SPEARS :

"'GENTLEMEN — We hereby accept your proposition of this date giving us the exclusive sale in the United States of the Willis sapspout for the terms mentioned.

"'Yours truly,

"'(Signed.)           "'CHAS. MILLAR & SON.'"

"8th. The sap-spouts manufactured by the said copartners were not made in strict conformity to the specifications of the patent No. 189,330, but at the commencement of said copartnership the spouts were made after patterns furnished by said defendant and which patterns were embraced in said sale and were used as a part of the partnership property, and from time to time different alterations and improvements have been made in the spout which was manu-

factured by said copartnership, and there is now being manufactured and furnished to said Millar .& Son a spout substantially in the form and of the pattern which was in use by and being manufactured by said firm of Willis & Spears immediately prior to and at the time of the making of said contract with said Millar & Son. And the spouts which have been manufactured and sold by said copartnership and which have been furnished to said Millar & Son are each marked Pat. 1887."

" 10th. In the fall of 1887, the plaintiff removed from Colton to Canton where he has since resided and since that time he has taken no active part in the partnership business and has given no time or attention to said business. Prior to such removal both the said copartners had resided at Colton and the partnership business had been carried on from that place, and each party had contributed about equally of his time and attention to said business.

" 11th. Soon after the removal of said plaintiff from Colton the defendant stated to him that he should not continue the business of making sap-spouts and divide with him and that there was not enough of the business to divide, that he must buy out the business or sell ; to which the plaintiff replied that he would sell his interest in the business and would name a low figure, but no further negotiation was had and no proposition or agreement made, and thereafter the defendant notified said Millar & Son that he was carrying on said business in his own name, and requested them to change the account to his name, and he tore the name of Willis & Spears from said contract, and from that time the correspondence and remittances from Millar & Son were to the defendant personally."

The defendant claims that from the period that he so tore the name of Willis & Spears from said contract the plaintiff has had no interest in the said business, and he refuses to account with him or to convey to him a one-half interest in the said patent. Plaintiff has never paid the purchase price for said patent, nor has the defendant ever demanded such payment. The defendant continued to furnish sap-spouts to Millar & Son up to the time of the trial of the action.

The answer admits the sale of an undivided one-half of the patent right in question by defendant to plaintiff, and the formation of the partnership, as alleged in the complaint, and hence, no issue in these

regards being raised in the pleadings, the conclusions of the referee founded on such admissions cannot be deemed erroneous. Were there not such admissions, however, — by the verbal agreement between the parties under which they had as copartners carried on the business for eight years, treating said patent right during that period as partnership property, and under all the circumstances of the case, the plaintiff acquired an equitable title or interest in said invention, which equity will protect. The evidence disclosed an equity in favor of plaintiff, rendering a judgment for specific performance proper. (*Burr* v. *De La Vergne*, 102 N. Y. 416–422; *Somerby* v. *Buntin*, 118 Mass. 279; *Hapgood* v. *Rosenstock*, 23 Fed. Rep. 87; *Adams* v. *Messinger*, 147 Mass. 189; *Binney* v. *Annan*, 107 id. 94; 18 Am. & Eng. Ency. of Law, 139.)

We, therefore, conclude that the referee did not err in holding that the equitable title to said patent vested in the firm of Willis & Spears, and in directing an assignment thereof by defendant to plaintiff pursuant to the oral contract and a sale of the partnership assets, including said patent right.

The defendant claims that the plaintiff was not entitled under the complaint to compel an accounting or to recover in this action, because, as alleged, the partnership was formed to manufacture spouts under the patent No. 189,330, while, in fact, no spouts were ever made under that patent. That all the spouts manufactured by the copartnership were made under another patent owned by defendant. The referee finds that the spouts that were manufactured by said copartnership were not made in strict conformity with the specifications of said patent right No. 189,330, but were made after patterns furnished by defendant, and which patterns were embraced in the sale and used as part of the partnership property, and from time to time alterations and improvements were made.

The fact that the copartners who, under the partnership agreement, were to manufacture spouts under the above-mentioned patent, in fact made and sold spouts varying from the specifications thereof, does not interfere with the plaintiff's right to recover his share of the partnership profits. It is not material under what patent they made their spouts. Whatever spouts were made were manufactured by them as copartners, and each member was entitled to his share of the profits and to call the other to account. We,

therefore, conclude that the referee properly directed an accounting to be had of the partnership transactions between the parties. If there was any variance between the allegation in the complaint and the proof in the regard above mentioned, such variance was not. material. (Civil Code, §§ 539, 540.)

We also think that the judgment properly provided that defend-ant account for all sales of sap-spouts to the day of the entry of judgment. The copartners, on January 18, 1887, made a written contract with Charles Millar & Son for the sale to the latter of all spouts which the firm should thereafter manufacture during the life, of the patent, about eight years. This contract was owned by the firm and was valuable. The defendant afterwards, without the. knowledge or consent of plaintiff, assumed to destroy said contract,. and make a new one in his own name and for his own benefit, and thereafter to sell spouts under said new contract made under an improvement of said patent No. 189,330 invented by said defendant.

When the contract with Charles Millar & Son was made plaintiff. and defendant were copartners and the owners of all benefits and advantages and profits to be derived under said contract. If plain-tiff in any way failed to perform his duty as a copartner, either by moving from Colton to Canton, or in neglecting the partnership business, or in any other way, defendant could have procured a dis-solution of the copartnership, but until he did so the partnership continued. The evidence failed to show a legal abandonment of the partnership enterprise by plaintiff. The relation between the. parties was one of trust and confidence. Each was bound to act in entire good faith to the other. Nor could a clandestine stipulation or contract be made by either for a private advantage to himself. The defendant had no right to destroy the valuable contract which the firm owned with Charles Millar & Son or to take a new contract. in his own name. Such an act was a fraud on the firm. It was. somewhat like one member of a copartnership taking a renewal lease of premises occupied by the firm, as in *Mitchell* v. *Reed* (61 N. Y. 123), and *Struthers* v. *Pearce* (51 id. 357). The fraud here, how-ever, is much more flagrant than in the cases cited, because the defendant before making a new contract was compelled to cancel a. valid and valuable contract owned by the firm without any authority whatever to do so.

Under the circumstances the new contract made by defendant with Charles Millar & Son, and his receipts thereunder should inure to the benefit of the copartnership. The contract made by the firm would not expire until 1895. Defendant having unlawfully assumed to destroy that contract and take a new one for his own benefit should be deemed to hold it for the benefit of the firm he has attempted to defraud. This is so, notwithstanding the sap-spouts furnished, since the defendant attempted the destruction of said firm's contract with Charles Millar & Son, although in substance in the form and pattern as used immediately prior to the making of the said contract, as the referee finds, are not exactly the same. (See 17 Am. & Eng. Ency. of Law, 1058, 1059, 1060; Story on Part. § 174; 3 Kent's Comm. 51.)

It is probably true as defendant claims that plaintiff has no interest in the new patent invented by defendant. (*Burr* v. *De La Vergne*, 102 N. Y. 415.)

But the referee does not provide for the assignment of such patent or a sale thereof as a part of the partnership assets. He directs an assignment of an undivided one-half interest in said letters patent No. 189,330, and a sale of said patent right.

It follows that the judgment should be affirmed, with costs.

MAYHAM, P. J., concurred; HERRICK, J., dissented.

Judgment affirmed, with costs.