This action was tried before a referee who reported in favor of the plaintiffs; judgment was entered upon the report, and defendant appealed to the general term of the supreme *Page 217 
court. The court then ordered the report of the referee to be set aside and judgment to be rendered for the defendant. From that judgment the plaintiffs have appealed to this court.
The complaint stated in substance, that prior to July 29, 1845, the plaintiffs had a demand on a promissory note made by Jophat Hasbrouck, since deceased, of whose estate defendant is administrator. That on the day above mentioned a final accounting was had of defendant's doings as administrator, before the surrogate of Ulster county; that therein the demand on said note was admitted as one of the debts due by said estate; that it was decreed that the net assets of the estate amounted to sixty cents on the dollar due to each creditor, and that defendant should pay to each creditor sixty per cent on his demand within sixty days from the date of the decree, which on said demand of plaintiffs, amounted to $192,15. That after the sixty days expired, plaintiffs made demand of defendant, who refused to pay. That at the time of said demand, the decree remained in force, and plaintiffs owned said claim, and that defendant is indebted to them thereupon in $192,15 and interest from September 27, 1845, for which they demand judgment. The defendant in his answer set up sundry matters which will be hereafter noticed so far as they are material. The plaintiff replied and the cause was referred and resulted as before stated. The special report of the referee finds the making of a note by Jophat Hasbrouck, dated March 15, 1841, to Joseph O. Hasbrouck or bearer, for $244,80, to be paid April 1, 1843, with interest at six per cent to be paid annually. That Joseph O. Hasbrouck, on the 1st of May, 1841, transferred the note with other securities to the plaintiffs as collateral security for the payment of his bond to them, made and bearing date on that day, and that the plaintiffs had ever since remained in possession of said note; that ever since the execution of said bond there has been and still is due on said bond from Joseph O. Hasbrouck to the plaintiffs a greater sum than the amount claimed by plaintiffs against the defendant. That Jophat Hasbrouck died intestate, October 27, 1842, and defendant and one Ida Hasbrouck were on the 3d day of June, 1843, *Page 218 
appointed administrator and administratrix. That after six months a notice was duly given by them in pursuance of a surrogate's order, for persons having claims to exhibit them on or before May 25, 1845. That no claim was presented by plaintiffs within the time, and that defendant had no notice or knowledge of plaintiffs' claim till January, 1846.
That soon after such letters were granted, said Joseph O. Hasbrouck, the payee of said note, in his own name and for his own benefit, presented to defendant as administrator a claim against the estate of Jophat on account of this note, and another note made by Jophat to him, and of an account against the deceased; and defendant knowing from deceased's declarations of the making and validity of this note, but not its terms, did not contest the claim but admitted it. And defendant advanced in cash to and for the benefit of Joseph O. Hasbrouck on account of his claim, about June, 1844, $120,67, and also in 1845, prior to July, paid the sum of $130, on account of a note made by Joseph O. to Abraham B. Winfield, upon an agreement with Joseph O. that such advance was to be deemed a payment of his claim;
and at the same time Joseph O. agreed to give defendant a receipt in full for his claims on the estate, defendant agreeing to credit the balance on his own claims against Joseph O. That these payments, advances and credits were made by defendant in the belief that Joseph O. was the owner and holder of the note, and before any notice or knowledge of plaintiffs' claim. The referee then finds certain proceedings for the sale of intestate's real estate before the surrogate, and a sale in pursuance thereof.
That the defendant and administratrix petitioned for a final accounting after eighteen months were elapsed, and on the 2d of June, 1845, a citation was issued requiring the creditors and next of kin to appear for that purpose on the 29th of July, 1845, which citation was duly issued, published and served, in such manner as the law directs. That upon proof of the due service of such citation, the surrogate proceeded, and on the 29th of July, 1845, made a decree. The decree recites the petition, citation, *Page 219 
and the return thereof, with affidavits of due service dulyverified, and that none of the creditors or next of kin appeared to oppose, and that thereupon the final account was filed, and it was adjudged that the administrator and administratrix had received $2431,96.
The decree further recites that from said account it appeared that $861,35 had been expended for commissions and other expenses of administration, leaving for distribution among creditors, $1570,61; and then further recites, that inasmuch as the estate is insufficient to pay all debts, and as administratrix and administrator have advertised for claims and the claims presented amount to $2615,17, specifying them, including "Jonas Hasbrouck" $320,35; and after some further recitals, it adjudges that the administrator and administratrix are chargeable with $2431,96, directs the payment of the said sum of $861,35, for expenses, c. and that to the creditors of deceased the administrator and administratrix pay ratably at the rate of sixty cents on the dollar in sixty days from the date of the decree. The referee further finds, that Joseph O. Hasbrouck attended on the final accounting and admitted payment to him of his claim by defendant, and the amount was credited in the final account as a claim of the defendant against the estate; Joseph O. stating that thenote had been mislaid so that he could not produce it; and further that the said sum of $320,25 awarded to defendant as due to him as a creditor of the estate was so awarded on account of the said promissory note then held by plaintiffs, and that sixty cents on the dollar upon said claim was received by him accordingly.
The referee further finds that the plaintiffs, prior to 1846, took no measures to collect the demands assigned to them by Joseph O. Hasbrouck.
Thereupon it was on the part of the defendant insisted,
1. That the complaint was unproved in its whole scope and meaning, there being no decree recognizing the plaintiffs as creditors of the estate.
2. That the neglect of the plaintiffs to give notice of their *Page 220 
claim to the administrators of Jophat Hasbrouck under the circumstances, and because of the payment by defendant of the amount of the note to Joseph O. Hasbrouck, in good faith, before notice of the plaintiffs' rights, was a good defense.
3. That the surrogate's decree on final settlement was a bar to plaintiffs' claim.
The defendants' claim to the note in question and to the amount awarded to be paid thereon out of the estate of the deceased, is not founded upon payments made by him, in course of administration, but upon the ground that he had become the purchaser of the note and thereby a creditor of the estate of the intestate. Upon this ground he put his claim before the surrogate, and upon this ground the surrogate adjudged him to be a creditor of the estate. He could not become the bona fide
holder of a note, which was not owned by or in the possession of the person from whom he professed to derive title. The fact of want of possession was in itself notice, and if he did not require the production and delivery of the note it was his own folly to trust to the person with whom he was dealing, and he must bear the consequences if any loss occurred. Except therefore for the decree of the surrogate, the defendant could not retain the money paid on account of the note from the actual holder, but would be liable to a suit by him for money had and received to his use. (Talbot v. Bank of Rochester, 1 Hill, 295.)
The more serious question remains, as to the effect of the surrogate's decree. Upon the face of the pleadings it is admitted that the citation to settle the account of the administrator and administratrix was served in such manner as the law directs, and this we think is a full admission of legal notice to the plaintiffs in this suit of the proceedings by the administrator and administratrix for the settlement of their accounts.
An executor or administrator, after eighteen months from his appointment, may be required to render an account of his proceedings by the surrogate, either on the application of some person having a demand against the personal estate of the deceased, or without any such application. *Page 221 
When so required to render an account by the surrogate, or upon the voluntary rendering of an account of all his proceedings, the executor or administrator may have a citation to all persons interested in the estate, to attend a final settlement of his accounts.
This citation is to be served in the manner pointed out by the statute. (2 R.S. 93, §§ 61, 62, 63.)
The final settlement of the account by the surrogate, and the allowance thereof, is to be deemed conclusive evidence against all persons in any way interested in the estate, upon whom the citation has been duly served, of the following facts, and no others:
1. That the charges in the account for payments to creditors, legatees and next of kin, and for necessary expenses, are correct.
2. That the executor or administrator has been charged with all the interest with which he is chargeable, upon such moneys received by him, as are embraced in his account.
3. That the moneys stated in the account as collected, were all the moneys collectable at the time of the settlement, on the debts stated in the account.
4. That the allowances for decrease, and the charges for increase, in the value of any assets, made in the account, were correctly made.
The account provided for by these sections, though termed a final account, and the settlement thereof, though also termed final, are not in any broad sense possessed of that character. Their finality is limited to the particulars enumerated in the above four subdivisions of section sixty-five; and even as to those particulars, they are final only as to such persons as were notified in the particular manner required by statute.
The executor or administrator, on such accounting, gets no adjudication that no other assets are chargeable to him, as having been received, than those which are stated to have been received. He may still be charged for not collecting debts collectable, and not stated in the account, and with interest on both these classes of charges; and it is quite obvious, that besides these, and probably other matters relating to the time prior to the settlement *Page 222 
of the accounts, the executor may discover and be able to get possession of assets, the existence of which was unknown at the time of the settlement; and that as to all these, his duties and the rights of creditors and others interested in the estate of the deceased, remain unaltered by these proceedings upon the so called final accounting.
After the provisions above cited from chapter six, part two of the revised statutes, follows in section 71, page 95, a provision that whenever an account shall be rendered and finally settled, as aforesaid, "if it shall appear to the surrogate that any part "of the estate remains to be paid or distributed, he shall make a "decree for the payment and distribution of what shall so remain, "to and among the creditors, legatees, widow, and next "of kin to the deceased, according to their respective rights; "and in such decree shall settle and determine all questions concerning "any debt, claim, legacy, bequest, or distributive share, "to whom the same shall be payable, and the sum to be paid to "each person."
To give a construction to this section, it is necessary to keep in view the other provisions of this sixth chapter, in order that if possible, a harmonious system may be discerned and declared, where the provisions of the law, unless carefully considered, might seem to be in conflict with each other.
The general object of the chapter is, to insure the speedy administration of the estates of deceased persons, adequate facility of enforcement to the rights of claimants against the estate, and adequate protection to executors and administrators against claimants upon the estates of which they are the representatives. It is these two classes of interests with which the chapter is particularly concerned, and with reference to them its provisions are in the main to be expounded. The rights of claimants inter sese, except in so far as the determination of those rights is necessary to the fixing of the rights of the two classes specified, are not within the general purview of the chapter.
The statute does not any where, in terms, attempt to take away or diminish any of the substantial rights of creditors upon, *Page 223 
or as consequent to, the mere fact of the death of the debtor. The period in which a debt shall become barred by lapse of time, is not diminished, but, on the contrary, is increased. It is not in terms declared to be the duty of the creditor to present his demand, or to seek the enforcement of it against the executor or administrator, on pain of being barred of his claim. In short, there is no expression or provision in the statute, which, as a consequence of the creditor's lying by and merely doing nothing, for any period short of the time provided by the statute of limitations, takes away or at all impairs his demand against the estate of the deceased debtor.
In case, after notice by the executor or administrator under 2R.S. 88, § 34, c. the creditor presented his claim and it was rejected, then it is true, if suit was not brought in six months the claim was barred. But it was not obligatory on the creditor to move, and so this provision is not in conflict with the view above taken.
The consequence of not moving on the part of the creditor is not, under those provisions general, to take away his right against the estate of the deceased; but particular, to enable the executor or administrator to proceed in administration as if the claim did not exist, and to protect him in so proceeding. Thus section 39, (2 R.S. 89,) provides that in a suit on such a claim, the executor or administrator shall not be chargeable for any assets or moneys that he may have paid on claims inferior in degree, or on legacies, or in distribution; and by section 40, in such action the plaintiff shall be entitled to recover only to the amount of such assets as shall have been in the hands of the executor or administrator at the time of the commencement of the suit; or may take judgment for the amount of his claim or any part of it to be levied and collected of future assets; and by section 42, the creditor so neglecting to present his claims may, notwithstanding, recover from the next of kin and legatees, to whom assets have been paid or distributed.
The effect, and the whole effect of the creditor lying by, is, that while the general obligation of the debtor's estate remains, *Page 224 
even to that extent that he may follow it into the hands of legatees and distributees, so much of the assets as have in the course of administration been paid to other creditors, even if inferior in degree, is no longer subject to his claim. This exemption proceeds not upon the ground that the claims of two creditors under such circumstances are to be deemed adverse to each other, as well as to the estate of the debtor, but that each creditor stands upon independent ground, representing his own claim; and that when between the creditor so standing and the executor or administrator representing the estate, the rights of those two parties have been adjusted in due course of administration, this other creditor cannot be heard to allege any thing against their doings, fraud and collusion always excepted. (Candee v. Lord, 2 Comst. 269.)
The general scope of the chapter in question, regarded in this way, affords considerable light upon the construction of some of its particular provisions. The distribution which the surrogate is directed to make after an account shall be rendered and finally settled, is to be made only after the application of the administrator or executor to have his account finally settled; for it is only on such an application that the surrogate has power to proceed to a final settlement. Such final settlement and distribution are, therefore, made on the motion of the executor and administrator, and are intended for his protection in the administration of the estate; that is their primary purpose, and contests between creditors, so far as they arise and are necessary to be disposed of in order that this protection may be given to the executor or administrator, must be disposed of, and such disposition will be conclusive upon the parties to them. But in case of a creditor who does not appear, we have seen that notwithstanding his failure to appear, he retains his whole claim upon the estate, though he loses his right to the particular fund. This construction is in harmony with the whole scope of the chapter; as well with that part which provides how far the settlement of the account of the executor or administrator shall be final, as *Page 225 
with that in regard to the presentation of claims to the executor or administrator after notice.
As, therefore, the true construction of the whole chapter requires us to hold, that a creditor's demand is not barred by any determination under section 71, at all events unless he appears and his claim comes thus directly in contest, we thereby in effect determine that in the absence of an appearance by any particular creditor, any determination of the surrogate as to the payment or nonpayment of a particular demand, is a determination between the estate and the person presenting the demand, and not between that person and all the other creditors as well as the estate.
In this case, if the plaintiffs had appeared before the surrogate and claimed to be paid the note in question, in course of administration, and the defendant had advanced his counter claim, and the surrogate had then decided in his favor, that determination would probably have been conclusive; but as the plaintiffs did not appear, and the surrogate's determination could not, therefore, bar their claim against the debtor's estate, it is to be regarded as a determination between the defendant and the estate only, and so far, conclusive upon all the world, except for fraud or collusion. In short, that the defendant with this determination in his favor, is precisely in the same position with reference to the plaintiffs' rights, as he would have occupied had he recovered a judgment at law against the estate, claiming upon the note in question. In that case the plaintiff might either sue him for money had and received, or sue the party liable upon the note.
The judgment of the general term should be reversed, and that entered on the report of the referee affirmed.