NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—December, 1882.

GILMAN v. WILBER.

*In the matter of the estate of* AMANDA M. BENEDICT, *deceased.*

As to whether a contract to furnish tuition for an entire year, made by one who dies before the expiration of such term, is such an engagement as the executor of decedent's will is bound to fulfil, *quære.*

It is not a ground for disallowing to an executor, upon his accounting, the amount of a promissory note owing by decedent, paid by the executor to the payee, that the latter did not surrender the note upon receiving payment, where there is no proof that the note is in anybody's hands, and no demand, founded thereupon, has been made within the time for the presentation of claims under the executor's advertisement.

Bank of Poughkeepsie v. Hasbrouck, 6 *N. Y.*, 216—distinguished.

Testatrix, who was principal of a female seminary, died in March, 1877, after a long illness which had seriously interfered with her management of the business, and before the fulfilment of existing contracts

for the education of her pupils, the bills of the most of whom had been paid to her in advance. Her executor kept the institution in operation for eleven weeks, and until the end of the school year, collecting amounts due, fulfilling current obligations, and paying necessary disbursements, making up a deficiency of about $1,600 from the funds of the estate; and then sold the furniture and other belongings of the school, including the "good will," at private sale, without advertisement or other public notice, for the sum at which the bare furniture had been appraised in the inventory. It appeared that the executor acted in good faith, and exercised reasonable prudence and skill in pursuing a course which there was reason to believe was for the best interests of the estate. The "good will" was not appraised, and the evidence did not show that it had a pecuniary value, or that the executor had reason to believe that any more could have been obtained for the property than it yielded.—

*Held,* that the executor should not be charged with the loss which resulted from continuing the school until the close of the term, and that he was justified, under the circumstances, in making the sale of the property at the price which he received.

THIS was a judicial settlement of the account of Francis A. Wilber, as executor of the will of decedent. Objections were filed, and exceptions to the referee's report were taken, by Anna K. Gilman, a creditor, and others. The facts appear sufficiently in the opinion.

WM. H. CLARK, *for executor.*

ABRAM WAKEMAN, *for objecting creditor.*

THE SURROGATE.—The will of this decedent named Francis A. Wilber as its executor. He was duly granted letters testamentary, and in October, 1878, filed an account, which was supplemented by another in the succeeding year. To these accounts objections were filed, and the matters in issue were thereupon referred to an auditor, whose report, now before the Surrogate, sustains one of such objections and one only. After careful examination of the evidence, I am of the opinion that this report should be in all things confirmed.

The testatrix, under the name of Mrs. J. T. Benedict, conducted, for about thirty years, a young ladies' seminary in this city.  She died in March, 1877, after a long illness which, for many months, seriously interfered with her active management of business.  Her death occurred in the midst of a school year, and before the fulfilment of the contracts between herself and her patrons, for the education of the pupils committed to her charge

Her executor kept the seminary in operation for eleven weeks, and until the end of the school year, continuing also, for that period, all the household arrangements, boarding the teachers and pupils, discharging the current expenses from the funds of the estate, and thus fulfilling the various contracts to which the decedent had made herself a party.  To the instructors he paid substantially the same rate of salary which they had received from Mrs. Benedict.  He collected $2,000 in term bills.  His total disbursements on account of the school were $3,600. He made up this deficiency of about $1,600 from the funds of the estate.

It is claimed by the exceptor that the executor should be charged with this sum, and with interest thereon from June, 1877, because he was under no legal obligation to fulfil the contracts into which Mrs. Benedict had entered, and ought not to have fulfilled them if it involved any drain upon the funds of the estate.

The furniture of the school and all its other belongings, including the "good will," were sold at private sale, and without advertising or other public notice, for $2,750.  It does not appear that the executor was ever offered any more, or that he believed or had reason to believe that more could be obtained, or, indeed, that any more could

in fact have been obtained. This sum was the precise valuation placed in the inventory upon the bare furniture of the establishment. At the time of the appraisement, some discussion seems to have arisen as to the worth of the "good will," but no valuation was placed upon it by the appraisers.

Counsel for the exceptor claims that it was fairly worth $5,000, and that the executor's account should be surcharged in that amount.

The evidence, however, does not satisfy me that there was any money value to the good will of Mrs. Benedict's school after her decease. The lease of the premises had nearly run out. There had been for some years a falling off in the number of pupils and in the net receipts.

It is claimed, indeed, by the executor's counsel that, for the two years just prior to decedent's death, the school had been conducted at a loss, and though the decedent's accounts do not positively disclose that such was the fact, they show that the profits, if any, were scanty and gave no promise of increase.

The testimony of Mrs. Read, and that of Mrs. Bradford, in respect to the value of the good will, were partly based upon the supposed existence of certain facts which do not seem to me to have been established by the evidence.

Even if it were fully proven, however, that the good will had a money value, it is manifest that the executor should not be charged therewith, if, under all the circumstances in making the sale of the property at the price he received, he seems to have acted in good faith, and with the exercise of such prudence, skill and discretion as the law demands of persons in his situation. I do not find that, in these particulars, he was at fault. Nor can I hold

that he should be charged with the loss which resulted from his continuing the school until the close of the term.   The institution was organized with a corps of teachers selected by Mrs. Benedict herself.

For six months or more, in consequence of her illness, it had been conducted without her personal supervision. The tuition of most of her pupils had been paid for in advance, and a portion of the instruction for which she had been rewarded was due to them at her death.

It is an interesting and somewhat doubtful question whether the contracts between Mrs. Benedict and her patrons, which were entire for a school year, were such as the executor was legally bound to fulfil.   This question, however, need not be here decided.   For, in the exercise of reasonable discretion, the executor might well have believed that it was for the best interests of the estate that he should take the course which he in fact pursued, and it is by no means plain that his conclusion was not entirely correct.   He was under the necessity of deciding promptly.   It does not appear that he was then in a position to discover whether or not the estate was solvent, and he might well have believed that a sale, whenever it might be effected, would prove far more advantageous if the school was then in operation than if it had ceased to exist.

It is not claimed that there was any extravagance in the economy of the household or in the management of the school; and, for the reasons urged by executor's counsel, the retention of the premises for a brief period after the close of the term does not seem seriously objectionable.

It appears that one Bloom held a note for $2,200 and

interest, signed by decedent and her husband, and secured by a mortgage on the furniture of one and the library of the other. Upon the evidence, I find that Mr. Benedict signed the note as surety; a fact which it was competent to prove by parol testimony (Hubbard v. Gurney, *64 N. Y., 457*). The furniture and property of Mrs. Benedict being sufficient to pay this note, there was no occasion for resort to Mr. Benedict's library, and indeed no right of so doing until the other remedy was exhausted.

The counsel for the objector claims, however, that the executor should be disallowed the amount paid to Bloom, because it was not proved that the note was given up at the time the mortgage was discharged.

Bloom testified that, at the time of the payment, he surrendered the note. The executor thinks otherwise. The Court of Appeals held, in Bank of Poughkeepsie v. Hasbrouck (*6 N. Y., 216*), under circumstances which it characterized as "doubtful and suspicious," that payment of a note by an executor to the payee thereof who did not surrender it, did not protect the executor when he was afterwards sued by a *bona fide* holder for value, even though he had duly advertised for claims, and though the note was not presented for payment within the time limited by the advertisement.

This case is relied on by the exceptor's counsel, but is not, it seems to me, pertinent to the present contention. Here there is no proof that the note is in the hands of an innocent holder for value, or in anybody's hands; and even if it is, as no demand has been made within the time for the presentation of claims under the executor's advertisement, even a *bona fide* holder can find no relief out of the property which is embraced in the present ac-

counting. It may be added that, if decedent's husband had himself paid Bloom's claim, he would have been subrogated to the rights of the mortgagee, and could have insisted upon such rights, as against the assets of the estate. He would not have been remitted to the position of a simple creditor.

Without reviewing in detail the other objections to the auditor's report, I declare my concurrence in all his conclusions.

The report is therefore confirmed, and a decree may be entered accordingly.