Rollins, S.
The will of the decedent named Francis A. Wilder as its executor. He was duly granted letters testamentary, and in October, 1878, filed an account, which was supplemented by another in the succeeding year. To these accounts objections were filed, and the matters in issue were thereupon referred to an auditor, whose report, now before the Surrogate, sustains one of such objections, and one only. After careful examination of the evidence, I am of the opinion that this report should be in all things confirmed.
The textatrix, under the name of Mrs. J. T. Benedict, conducted for about thirty years a young ladies’ seminary in this city. She died in March, 1877, after a long illness, which, for many months, seriously interfered with her active management of business. Her death occurred in the midst of a school year, and before the fulfillment of the contracts between herself and her *69 patrons for the education of the pupils committed to her charge.
Her executor kept the seminary in operation for eleven weeks, and until the end of the school year, continuing, also, for that period all the household arrangements, boarding the teachers and pupils, discharging the current expenses from the funds of the estate, and thus fulfilling the various contracts to which the decedent had made herself a party. To the instructors he paid substantially the same rate of salary which they had received from Mrs. Benedict. He collected $2,000 in term bills. His total disbursements on account of the school were $3,600. He made up this deficiency of about $1,600 from the funds of the estate.
It is claimed by the exceptor that the executor should be charged with this sum, and with interest thereon, from June, 1877, because he was under no legal obligation to fulfill the contracts into which Mrs. Benedict had entered, and ought not to have fulfilled them if it involved any drain upon the funds of the estate.
The furniture of the school, and all its other belongings, including the “good-will,” were sold at private sale, and without advertising or other public notice, for $2,750. It does not appear that the executor was ever offered any more, or that he believed or had reason to believe that more could be obtained, or, indeed, that any more could in' fact have been obtained. This sum was the precise valuation placed in the inventory upon the bare furniture of the establishment. At the time of the appraisment some discussion seems to have arisen as to the worth of the “good-will,” but no valuation was placed upon it by the appraisers.
Counsel for the exceptor claims that it was fairly worth $5,000, and that the executor’s account should be surcharged in that amount. The evidence, however, does not satisfy me that there was any money value to the good-will of Mrs. Benedict’s school after her *70 decease. The lease of the premises had nearly run out. There had been for some years a falling off in the number of pupils and in the neb receipts.
It is claimed, indeed, by the executor’s counsel that for the two years just prior to decedent’s death the school had been conducted at a loss, and though the decedent’s accounts do not positively disclose that such was the fact, they show that the profits, if any, were scanty, and gave no promise of increase.
The testimony of Mrs. Bead and that of Mrs. Bradford, in respect to the value of the good-will, were partly based upon the supposed existence of certain facts which do not seem to me to have been established by the evidence.
Even if it were fully proven, however, that the goodwill had a money value, it is manifest that the executor should not be charged therewith if, under all the circumstances in making the sale of the property at the price he received, he seems to have acted in good faith, and with the exercise of such prudence, skill and discretion as the law demands of persons in his situation. I do not find that in these particulars he was at fault. Nor can I hold that he should be charged with the loss which resulted from his continuing the school until the close of the term. The institution was organized with a corps of teachers selected by Mrs. Benedict herself. For six months or more, in consequence of her illness, it had been conducted without her personal supervision. The tuition of most of her pupils had been paid in advance, and a portion of the instruction for which she had been rewarded was due to them at her death.
It is an interesting and somewhat doubtful question whether the contracts between Mrs. Benedict and her patrons, which were entire for a school year, were such as the executor was legally bound to fulfill. This question, however, need not be here decided. For in *71 the exercise of reasonable discretion the executor might well have believed that it was for the best interests of the estate that he should take the course which he in fact pursued, and it is by no means plain that his conclusion was not entirely correct. He was under the necessity of deciding promptly. It does not appear that he was then in a position to discover whether or not the estate was solvent, and he might well have believed that a sale, whenever it might be effected, would prove far more advantageous if the school was then in operation than if it had ceased to exist.
It is not claimed that there was any extravagance in the economy of the household or in the management of the school; and, for the reasons urged by the executor’s counsel, the retention of the premises for a brief period after the close of the term does not seem seriously objectionable.
It appears that one Bloom held a note for $2,200 and interest, signed by decedent and her husband, and secured by a mortgage on the furniture of one and the library of the other. Upon the evidence, I find that Mr. Benedict signed the note as surety; a fact which it was competent to prove by parol testimony (Hubbard v. Gurney, 64 N. Y. 457). The furniture and property of Mrs. Benedict being sufficient to pay this note, there was no occasion for resort to Mr. Benedict’s library, and indeed no right of so doing until the other remedy was exhausted.
The counsel for the objector claims, however, that the executor should be disallowed the amount paid to Bloom, because it was not proved that the note was given up at the time the mortgage was discharged.
Bloom testified that at the time of the payment he surrendered the note. The executor thinks otherwise. The court of appeals held, in Bank of Poughkeepsie v. Hasbrouck (6 N. Y. 216), under circumstances which it characterized as “doubtful and suspicious,” that *72 payment of a note by an executor to the payee thereof, who did not surrender it, did not protect the executor when he was afterwards sued by a bona fide holder for value, even though he had duly advertised for claims, and though the note was not presented for payment within the time limited by the advertisement.
This case is relied on by the exceptor’s counsel, but is not, it seems to me, pertinent to the present contention. Here there is no proof that the note is in the hands of an innocent holder for value, or in anybody’s hands; and even if it is, as no demand has been made within the time limited for the presentation of claims under the executor’s advertisement, even a bona fide holder can find no relief out of the property which is embraced in the present accounting. It may be added that if decedent’s husband and himself paid Bloom’s claim, he would have been subrogated to the rights of the mortgagee, and could have insisted upon such rights as against the assets of the estate. He would not have been remitted to the position of a simple creditor.
Without reviewing in detail the other objections to the auditor’s report, I declare my concurrence in all his conclusions.
The report is therefore confirmed, and a decree may be entered accordingly.