## *In re* VER VALEN'S ESTATE.

*(Surrogate's Court, Rockland County, Filed April, 1892.)*

1. EXECUTORS AND ADMINISTRATORS—BUSINESS CARRIED ON BY DECEDENT AND ADMINISTRATOR.

   An administrator will not be allowed to deduct from the amount of the inventoried estate, on his accounting, the value of the chattels belonging to a milk business, on the ground that the same belonged to him, and not to the estate, when it appeared that decedent (administrator's father) bought the milk route and property necessary to carry it on, and that the expenses of the sale of the property were charged to and paid out of the estate moneys by the administrator, and that it was upon a farm belonging to decedent and through the milk business that the father and son, by mutual family relations, without any definite fixing of rights, provided a livelihood and home for themselves.

2. SAME.

   Such administrator is chargeable with the proceeds of the sale of the "good will" of such milk business.

3. SAME—PROFITS ON SALE OF ESTATE.

   An administrator cannot make profit out of the estate by purchasing articles at an auction sale of chattels of the estate and reselling them at a profit, and on his accounting will be chargeable with the profits so made.

Settlement of accounts of Isaac Ver Valen, Jr., as administrator of the estate of Isaac Ver Valen, deceased.

Abram A. Demarest, for administrator; Garrett Z. Snider, Arthur S. Tompkins and William T. B. Starms, for contestants.

WEIANT, S.—The estate of the deceased was inventoried at $910.50, and for this sum, less allowances for unavoidable losses, the contestants claim that the administrator should be charged on this accounting. The administrator contends that, in addition to the deductions for such losses, there should be deducted therefrom the value of all chattels and properties included in such inventory which constituted a part of the milk

business, and were therein valued at $372, on the ground that the same were his individual property, and not a part of the estate. I think that the claim of the contestants must prevail. The evidence clearly shows these chattels and goods to have been the property of the intestate. The administrator admits that his father, the intestate, bought the horses, wagons and cans in question and inventoried, and that he paid Mr. Maroney for the milk route $125 or $130. He testifies that he only made one payment on the milk route, and that was $20, to a Mrs. Partridge. He says his father made all the rest, and that most of these notes against the estate were given for borrowed money to buy this milk route or purchase the properties used therewith. He testified that he supposed that the milk route belonged to his father, because he had no papers showing it belonged to him. He inventoried this property as a part of the estate, making the usual affidavit thereto, but designated it as disputed. He paid the claim of Louis Biltz, of $38, against the estate, and this he testifies was a difference on a wagon trade, made before his father's death, of a running gear of a milk wagon for another, which was the new one sold at the auction. This is one of the articles that he claims to have been his individual property. Further, the administrator in his accounts filed herein on October 26, 1891, charges himself with these articles, and swears to the amount accordingly without reservation or qualification. He some time subsequently, during the hearing, asked that his accounts might be amended, reducing the sum for which he should be charged to the extent of the value of these articles in question. The decision thereof was reserved, and now, in accordance with the facts, must be denied. The expenses of the sale of all this property were charged up by him to the estate, and paid out of the estate moneys. His verified accounts show this. It thus appears that all of this property appertaining to this milk business was acquired by the intestate, and that the administrator really believed and understood that he had not acquired any title to the same. Conceding, as he does, that it was all his father's at one time, to sustain his claim he must have

shown the acquisition of the property from his father in some form. This he has not done. All of the property, including the farm, belonged to the father, and it was upon this farm and through this milk business that the father and son, by mutual family relations, without any definite fixing of rights, provided a livelihood and home for themselves. I think that is the only interest this administrator had in this property and business.

The contestants also ask that the administrator should be charged with $150, the sum for which he sold the milk route to Wood; the sum of $50, realized by him over and above the price he paid for a wagon at the auction sale; the sum of $10, that he received over and above the price at which he purchased a horse at the auction sale; and, also, the sum of $17.50, being the difference between the price at which he inventoried and sold the one-half interest of a colt belonging to the estate. The facts, undisputed, are that the administrator did, after the auction sale of the inventoried property, sell the milk route, the right to serve customers, and the cans, to one Wood, for $200; that $50 of this price was retained to stand against tickets that the Ver Valens then had out in the hands of customers, and $25 was the value of the cans. The cans, as I understand, are already charged against the administrator, and whatever that value is should be deducted from the $150. The wagon in question was purchased by the administrator at the auction sale for $10, and subsequently sold, in about three or four months, to one Tuttle, for $55 or $60. The horse "Doll" he also purchased, for $165, and sold it within five or six weeks thereafter to George Lyeth for $175. The half interest in the black colt was inventoried at $12.50, and the colt was sold at the auction for $41, bought in by the administrator, and subsequently sold by him for $60. Under the rules of law and equity applicable to the rights and duties of trustees it seems clear that the administrator must account for these profits arising from the trust estate. Equitable as well as legal rules are applicable. Upson v. Badeau, 3 Bradf. Sur. 13. A trustee cannot make any profit to himself from a secret transaction, initiated while the relation

of trustee and *cestui que trust* exists.    Green v. Green, 2 Redf.
Sur. 408; Gardner v. Ogden, 22 N. Y. 327; Mitchell v. Reed,
61 N. Y. 123.    The principle of the rule of equity which pro-
hibits purchases by parties placed in a situation of trust or con-
fidence is that no such person can be permitted to purchase an
interest in property and hold it for his own benefit, where he has
a duty to perform in relation to such property which is incon-
sistent with the character of purchaser on his own account.
Van Epps v. Van Epps, 9 Paige, 237, Hawley v. Cramer, 4
Cow. 717; Willink v. Vanderveer, 1 Barb. 599.    This rule is
recognized in Harrington v. Bank, 101 N. Y. 259-264, 4 N. E.
Rep. 346.    It is there stated to be a "well-established doctrine
that a trustee cannot purchase or deal in the trust property in
his own behalf, or for his own benefit, directly or indirectly.
This is a rule of equity, and is not to be impaired or weakened."
In Mitchell v. Reed, *supra,* Judge EARL, writing the opinion,
says, at page 126, speaking of the relations of partners:

"The functions, rights and duties of partners in a great meas-
ure comprehend both those of trustees and agents, and the gen-
eral rules of law applicable to such characters are applicable to
them.    Neither partner can, in the business and affairs of the
firm, clandestinely stipulate for a private advantage to himself.
He can neither sell to nor buy from the firm at a concealed profit
to himself.    Every advantage which he can obtain in the busi-
ness of the firm must inure to the benefit of the firm.    These
principles are elementary, and are not contested."

In Estate of Barlow, 15 N. Y. St. Rep. 721, it was held that
the sale by the administrator of a deceased partner of his in-
terest in the partnership property to the survivors, and the sub-
sequent purchase by the administrator individually, is an un-
lawful transaction, whether or not the sale was in good faith.
One executor or trustee can make no valid agreement to pur-
chase or take the trust property at a fixed valuation from his
co-executor or trustee without being liable for the profits, if any
are made by the agreement.    Case v. Abeel, 1 Paige, 393.    An
executor who compounds debts or buys in for less than is due

cannot take the benefit to himself. Van Horne v. Fonda, 5 Johns. Ch. 388. No profit can be made by executors or administrators by increase of the estate. 3 Rev. St. (5th Ed.) p. 179, sec. 63. He must answer for the true value. Zilkin v. Carhart, 3 Bradf. Sur. 376. As to so much of the $150 received by the administrator on the sale of the milk route for the "right to serve customers," I may add that it appears he is chargeable for the same as an asset of the estate. It was a sale of the "good will" of the milk business that belonged to the intestate, and for whatever he may realize therefrom he is accountable. *In re* Benedict, 13 Abb. N. C. 67; *In re* Randell's Estate (July 27, 1889) (Surr.), 8 N. Y. Supp. 652; Zilkin v. Carhart, *supra;* Hitchcock v. Coker, 6 Adol. & E. 438; Howe v. Searing, 19 How. Pr. 14; Gibblett v. Read, 9 Mod. 459. Let a decree be settled and entered accordingly adjusting and settling the accounts.