## ANDERSON *against* LEMON.

One partner may, in good faith, purchase and hold for his own use, the reversion of real estate, occupied by the copartnership, under a lease for years.

But where one partner secretly makes such purchase in his own name, whilst the other partner with his concurrence, *is negotiating with the owner to obtain the property for the use of the firm*, the purchaser will be declared a trustee for the firm.

This was an appeal from the decision of the superior court of the city of New York, dismissing the bill filed by the appellant (Anderson) against Lemon, his former partner, praying for a partition, or a sale and division of the proceeds of certain real estate occupied by the parties as copartners under a lease, the fee of which had been purchased by the defendant in his own name, during the existence of the copartnership; and that the defendant account for the subsequent use of the property.  The facts sufficiently appear in the report of the decision in the court below, (4 *Sandf. S. C. Rep.* 552,) and in the opinion of this court.

Anderson *against* Lemon.

*F. B. Cutting* for appellant.

*C. O'Conor* for respondent.

GARDINER, J., delivered the opinion of the court: In a note to *Moody* v. *Matthews*, (7 *Ves.* 185, *Sumner's Ed.*,) it is said, as a deduction from adjudged cases, that "with a possible exception in favor of a *bona fide* purchaser, it seems to be an universal rule that no one who is in possession of a lease, or a particular interest in a lease, which lease is affected with any sort of equity in behalf of third persons, can renew the same for his own use only; but such renewal must be construed as a graft upon the old stock." In *Featherstonhaugh* v. *Fenwick*, (17 *Ves.* 298,) it was held that a renewal obtained one month before the expiration of the lease by two of three partners for their own benefit, enured to the partnership and must be accounted for as partnership property. But it has been held in several cases, that during the continuance of the lease, any one, even a trustee of the leasehold interest, may purchase the reversion in fee on his sole account. For, although the *cestui que trust* will be deprived of all claim of renewal, yet it has been thought impossible to consider the purchase of the inheritance as a graft upon leasehold, or life interests. (7 *Ves.* 186, *note, Sumner's Ed.*; 3 *Meriv.* 197, 352; 3 *Atk.* 38.) The learned judge who delivered the opinion of the superior court was therefore correct in saying that a copartner was at liberty to make the purchase stated in this case, under circumstances free from deception and fraud, and consequently to retain it.

These parties were copartners. They had an established place of business, which had been improved with their joint funds. It is obvious that when the negotiations for the purchase of the lot in question were first discussed, each of them supposed the copartnership would continue on some terms, although those terms were to be the subject

of future adjustment. Under these circumstances the complainant proposed to purchase the premises. The object of that purchase, or one of the objects, as is conceded, was to preserve for the copartnership jointly, their place of business, with all its advantages of location and established reputation. In the negotiations which ensued, the parties consulted with each other and acted together. The complainant was the agent by whom the propositions previously canvassed and agreed upon were communicated to the agent of the owners of the fee. The results of these interviews between Anderson and West were communicated from time to time to the defendant, who assented to what was proposed, and continued to advise with the complainant in relation to the joint purchase, down to the 26th of August. Upon that day, as the defendant alleges in his answer, the treaty as to the continuance of the copartnership ended in a definite proposition upon the part of the complainant, which the defendant in one part of his answer states that he rejected, and in another that the complainant requested an answer to his proposal, and that he in reply observed that he could say nothing further as to the copartnership until he received a letter from his brother in Troy.

Now from the early part of the previous May, the defendant had been negotiating secretly with West, the agent of the owners, for the purchase of this property for his own benefit; and while advising with his partner as to a joint purchase, was covertly bidding against him, with a request that his name might be concealed. His excuse for conduct which an honorable man could hardly justify, is, that he had learned for the first time, in August, that the complainant intended to purchase in his own, and not in the partnership name. This excuse can not be true if West is to be believed, for he swears that the first overtures to him on the part of Lemon were in May, and that the biddings continued down to the month of August, during which

time the property had been advanced from $14,000 to $17,000 by successive bids, and was finally taken by the defendant at $18,000.

Again, he does not pretend that the complainant intimated that the title which he was to take in his own name was not for the partnership account; or that he (the defendant) objected to the proposed mode of securing the property. The difference between the parties was, as to the terms of the subsequent partnership, not as to the mode in which the title was to be obtained. The copartnership had not then terminated, and its continuance was in the contemplation of both parties: the purchase was, ostensibly to be made for the benefit of the firm: the complainant upon the facts proved and admitted would have been the agent of both parties in effecting the bargain; and I see no reason why the defendant as the copartner and confidential adviser of the complainant did not incur the same obligation. If he designed to act independently of the complainant, he should have declared his intention, when the parties would have stood upon a footing of equality. As it was, he availed himself of the influence arising from the relation existing between him and the complainant as copartner, and as his confidential adviser, in a treaty for the purchase of real estate, begun and continued for months for their joint benefit, to induce such action upon the part of the firm, as should ultimately throw the property and the good will of the establishment into his own hands. This was not merely an offence against goods morals; it was a legal fraud, against which the complainant is entitled to relief. The defendant took a fraudulent advantage of his situation, and must be held a trustee of the property thus acquired for the benefit of the copartnership. (1 *Paige*, 158; and cases there cited: 17 *Vesey*, 311.) In the last case it was held, that a partner could not treat privately behind the back of his copartner for a renewal of a lease of the property where the business of the firm was carried on; if he did so he should be held a trustee for the firm. In that

case the copartner obtaining the renewal was merely silent as to his intentions. Here the defendant counseled with, and by his conduct and declarations intentionally induced the plaintiff to believe, that he was acting for the benefit of the firm, when his object was to secure the purchase for himself. There is nothing in the nature of the property acquired, that can shield the defendant from the consequences of such a fraud.

The judgment should be reversed and the defendant declared a trustee, &c.

Ordered accordingly.

# CASES

## ARGUED AND DETERMINED

### IN THE

# COURT OF APPEALS

### OF THE

## STATE OF NEW YORK,