[No. 7,534—Department Two.]
November 15, 1882.

## R. W. WARREN v. R. L. SCHAINWALD ET AL.

PURCHASE BY PARTNER—PARTNERSHIP—FRAUD—TRUST.—One member of a firm composed of several copartners, after the death of one of them, falsely and with the intent to prevent a proposed settlement, represented to his surviving copartners that he had become the owner of the interest of the deceased, and thus prevented a purchase by them of such interest.

*Held:* That he can not by compromise of a suit brought by one to whom the interest of the deceased was transferred and assigned, against all of the surviving copartners for an accounting, acquire the interest of the deceased and maintain for his own benefit a suit against the remaining members of the firm to enforce the claim for the full amount of the profits which would have been due to the estate of the deceased copartner. The purchase of the interest of the deceased was made for the benefit of the plaintiff and defendants; and, after repaying the amount expended by the plaintiff in compromising the claim, the residue of the profits should be divided among all of the surviving copartners according to their respective interests.

APPEAL from a judgment in favor of the defendants in the Superior Court of the City and County of San Francisco, and from an order denying a motion for a new trial. HUNT, J.

Action for a statement of partnership accounts. The facts are stated in the opinion of the Court.

*Naphtaly, Freidenrich & Ackerman,* for Appellant.

Plaintiff is not estopped from equitably claiming said interest. In purchasing said interest he occupied no fiduciary relation to the remaining partners. He was not dealing with a creditor of the firm. Until the affairs of the partnership are wound up and a balance-sheet struck, the relation of debtor and creditor between the surviving partners and the representative of the deceased partner does not arise. (*Gleason* v. *White,* 34 Cal. 263.)

At the time of the purchase by plaintiff the partnership affairs had not been wound up. The surviving partners were entitled to the exclusive possession of the assets, and were trustees for all concerned in the copartnership; but for what purpose? Merely to wind up the concern, collect the outstanding accounts, sell the property, pay the liabilities (if any),

and the balance (if any) divide among the survivors and the representative of decedent. They were trustees for no other purpose.

It is only in matters within the scope of the partnership business that each is the agent of the partnership. (Civil Code, Sec. 2429.) Towards each other the utmost good faith must be exercised in the management of the business. Neither one can use partnership funds in the purchase of property in his own name. If he does, he will be treated as holding in trust. (Civil Code, 2410.)

The obligations of copartners *inter sese*, whatever may be their nature and extent, refer only to the conduct of the business in which the firm is engaged. (*McKenzie* v. *Dickinson*, 43 Cal. 133; *Wheeler* v. *Sage*, 1 Wallace, 518.) This principle is not changed by Section 2411, Civil Code. The one partner can not obtain any advantage over the other in the partnership affairs. "In all proceedings connected with * * * a partnership, every partner is bound to act in the highest good faith towards his copartner." Said section imposes no greater obligations than does the common law.

It is only in matters connected with the partnership that partners are bound to act in the highest good faith towards each other, and no stronger illustration of this rule can be found than in the case of *McKenzie* v. *Dickinson*, where this Court holds that a partner may, with his own funds, purchase a judgment against his copartner, and enforce it by a levy upon and sale of his copartner's interest in the firm, and may become a purchaser at such sale. Hence, in matters not within the scope of the partnership business, the partners towards each other do not occupy confidential relations—they are not trustees for each other—as to those matters they deal with one another at arm's length, not only during the existence of the copartnership but after its dissolution.

The copartnership having been dissolved by the death of Louis Pokoney, in September, 1878, the effect of that dissolution was to put an end to all power of the partners or agents, except so far as necessary to close up the business. (5 Wait's Actions and Def., 140.) It was not necessary to purchase the Pokoney interest in order to close up the business. The Po-

koney interest could not have been purchased by the firm without the consent of all the surviving partners.

*Chickering & Thomas*, for Respondents.

Upon the death of a partner, the partnership is terminated as to future dealings; "yet for some purposes it may be said to exist, and the rights, duties and powers and authorities of the survivors remain, so far as it is necessary to enable them to wind up and settle the affairs of the partnership." (Story on Partnership, §§ 325, 344 and and cases cited.) The surviving partner, in all matters connected with the dissolution of such copartnership, and with the winding up of its affairs, are trustees for each other, and as a natural consequence cannot make a profit out of each other. (Civil Code, §§ 2410–2411.)

The settlement of the claim of the estate of Louis Pokoney was a necessary part of the dissolution. The affairs of the firm could not have been wound up without settling with the estate, either with or without a suit. It was a claim against the copartnership and the interest of each of the survivors therein, and differed from the claim of a copartnership creditor in the order of its payment only.

As in a creditor's claim, the surviving partners would have been the sole parties defendant. In case of suit a judgment on it would, in like manner, run against the surviving members. The satisfaction of the judgment would in like manner be made out of the joint property of the partnership. It was not, as in *McKenzie* v. *Dickinson*, 43 Cal. 120, a claim against an individual member or individual members of the firm, but it was at the time of its purchase by Warren, a claim against Warren himself, and the other copartners, in their capacity as joint trustees of the estate of the deceased partner. (*Heath* v. *Waters*, 40 Mich. 457; *Smith* v. *Walker*, 38 Cal. 385.) They also cited *Wheeler* v. *Sage*, 1 Wall. 518; Bigelow on Fraud, p. 234–190; C. C. §§ 1709, 1710, 2224, 2228, 2410, 2411; Story on Partnership, § 344; *Kelly* v. *Rogers*, 21 Minn. 151.)

The COURT:

On the eighteenth day of April, 1877, the plaintiff, Warren,

and the defendant, Schainwald, and others entered into a copartnership for the manufacture of powder, under the firm name of R. W. Warren & Co.

One Louis Pokoney was a member of the firm, and he departed this life in the month of September, 1878.

After the death of Pokoney, the surviving partners continued the business under the firm name, until the tenth day of January, 1879, at which time entire assets of the firm were sold and transferred to the Vulcan Powder Company.

In the month of December, 1878, the plaintiff and the defendants, Schainwald and Baum, had a meeting at which one of the defendants stated that the interest of Pokoney's estate could be purchased for the sum of three thousand dollars, and the defendants expressed a willingness to purchase it at that price, but the plaintiff then and there stated that he was the owner thereof; and thereupon the defendants refrained from purchasing the same.   The finding shows that the defendants were prevented from effecting such purchase by the statement of plaintiff.   The Court further finds that "the statement made by the plaintiff was untrue, and was made for the purpose of preventing the proposed settlement."

The Pokoney interest was transferred and assigned to one Lilienthal, and on the fifteenth day of January, 1879, he brought a suit against the surviving members of the firm of R. W. Warren & Co. for a settlement and accounting of the partnership dealings, and thereafter, in the month of September, 1879, the plaintiff, Warren, compromised said suit by paying therein a sum less than three thousand dollars.

The object of the present suit is to charge the defendants with the profits of the business which would be due to the estate of Pokoney if such interest were still in the estate. The Court below held that after Warren was repaid the amount expended by him in compromising the Lilienthal claim, the residue of the profits accruing to the Pokoney interest should be divided among the surviving partners of the firm of Warren & Co. according to their respective interests in the business of the copartnership.

We think the judgment of the Court below was correct. It is apparent from the facts in the case that the Pokoney interest would have been purchased by the surviving partners

for their mutual benefit, if the plaintiff Warren had not prevented such purchase by misrepresentation. Under the circumstances of the case he was justly held to have purchased for the benefit of himself and the defendants, his copartners.

Judgment and order affirmed.