[Civ. No. 1213.   Third Appellate District.—April 11, 1914.]

## J. F. DONLEAVEY, Appellant. v. F. H. JOHNSTON et al., Respondents.

PARTNERSHIP—WHAT CONSTITUTES—AGREEMENT TO CONDUCT GROCERY BUSINESS.—An agreement whereby two persons bind themselves "to become copartners under the firm name of Donleavey & Johnston" for the purpose of conducting a grocery business one year, one party to furnish the money, lease the premises in his name, purchase the merchandise, take the title to all property in his name, dictate all purchases of a greater value than twenty dollars, and be entitled to three-fourths of the profits, the other party to have one-fourth of the profits, and the two to give their best efforts to the advantage of the business, and each to have eighty-five dollars monthly from the profits, constitutes a partnership.

ID.—NAME OF CONCERN—IMPORTANCE AS SHOWING EXISTENCE OF PARTNERSHIP.—While the question whether or not a partnership exists is to be determined from the nature of the relation agreed upon, rather than the name which the parties give to it, some weight must be allowed to the language of the parties themselves.

ID.—GOODWILL OF BUSINESS—NATURE AND TRANSFER.—The goodwill of a business is the expectation of continued public patronage. It is property transferable like any other property, and its loss may be the subject of damages.

ID.—TERMINATION OF PARTNERSHIP—RIGHT TO GOODWILL.—Where a partnership agreement provides that one of the parties is to continue the business in his own name after the expiration of the partnership term, if the other does not then exercise his option to remain in the firm, the former is entitled to the goodwill of the business on the failure of the latter to exercise such option.

ID.—PURCHASE BY PARTNER OF PREMISES OCCUPIED BY FIRM—TITLE IN TRUST FOR PARTNERSHIP.—Where one partner secretly makes a purchase of the premises occupied by the firm, while the other partner, with his concurrence, is negotiating with the owner to obtain the property for the use of the firm, the purchaser will be declared a trustee for the firm.

ID.—TRUST RELATION BETWEEN PARTNERS.—The partnership relation is one of confidence and trust, and every partner is bound to act in the highest good faith toward his copartners and may not obtain any advantage over them in the partnership affairs by misrepresentation, concealment, or adverse pressure of any kind.

ID.—PURCHASE OF PREMISES BY PARTNER—OUSTER OF COPARTNER—DAMAGES.—Where two partners are conducting a grocery business on

leased premises, and one of them, acting clandestinely, joins with third persons in purchasing the premises and there establishing a grocery business, the ousted partner may maintain an action to recover damages for the loss of the goodwill of the business.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

U. Grant Hayden, for Appellant.

Ernest Klette, T. R. Thomson, and J. P. Bernhard, for Respondents.

CHIPMAN, P. J.—This is an action commenced by plaintiff as copartner of defendant Johnston, for an accounting, for a decree adjudging that plaintiff has an interest in certain real estate in the city of Fresno, claimed to be partnership property, and for damages. A demurrer to the complaint as first filed was sustained, the grounds of the demurrer being insufficiency of fact; that two or more causes of action are improperly joined,—namely, for an accounting, for damages, and to establish a trust; that the complaint is ambiguous and uncertain, in that it cannot be determined from it how plaintiff has been or is damaged or of what such damage consists, nor can it be · determined therefrom when defendants entered into the alleged agreement to purchase a certain grocery stock referred to in the complaint, nor when such agreement is to take effect. A demurrer to the amendment to the complaint on like grounds was sustained and plaintiff declining to further amend, judgment passed that plaintiff take nothing by his action.

The action grows out of the alleged breach by defendant Johnston of two certain written contracts, one entered into November 29, 1909, designated exhibit "A," and the other entered into as a continuation of exhibit "A," dated July 20, 1911, designated exhibit "B." By the contract, exhibit "A," the parties bind themselves "to become copartners, under the firm name of 'Donleavey & Johnston,' for the purpose of conducting a grocery business at the corner of O and Merced streets, in the city of Fresno, California, for

a period of time extending from the 20th day of November, 1909, to the 1st day of January, 1911, upon the terms and conditions as follows'': Summarizing these conditions: First party (plaintiff) was to furnish all the money to conduct the business (limited to $3,000), purchase merchandise and equipment of the store, lease the premises used for the business, ''in his own individual name'' and ''title of all property acquired for the use and conduct of the business'' was to remain in first party; both parties were to give their efforts to the best advantage of the business, each was to receive ''from the proceeds of sales'' the sum of eighty-five dollars, monthly, and was to have the right to buy goods from the firm at retail prices less ten per cent; all goods, merchandise and appliances were to be purchased only by first party when the price exceeded twenty dollars and first party ''shall have the sole right to draw checks upon the funds of said copartnership''; at the termination of the contract there was to be an accounting and settlement, the contract pointing out the manner of adjusting the interests of the parties. As a settlement was had for the period ending December 31, 1911, as is shown by exhibit ''B,'' it is not necessary to state the details of such settlement; the contract declared that ''it is the intention of the parties hereto that said business shall be conducted after the termination of this agreement'' and the terms on which second party (defendant Johnston) ''shall have the right to purchase a half or a quarter interest in said business and all the property and assets thereof,'' are set forth; neither party was to sign any note or bond by way of accommodation without the consent of the other party and a complete set of account books was to be kept recording all transactions, which should at all times be open to the inspection of both parties; upon a breach of any of the covenants, the party aggrieved may, upon 20 days' notice to the other party, terminate the agreement and have an accounting as provided in paragraph 5 of the contract.

Exhibit ''B'' purports to be ''an agreement of settlement and continuation of a certain partnership agreement entered into the 29th day of November, 1909'' (exhibit ''A''). It recites that ''said agreement by its terms, expired on the 1st day of January, 1911,'' and a ''settlement and adjust-

ment of the business of said partnership was had on said first day of January, 1911.'' The details of the settlement are set forth showing, when summed up, that the interest of plaintiff in the business was $4,077.17 and of the defendant $454.38. It is then stated that the parties desire to continue the business in accordance with the agreement, exhibit ''A,'' for one year from January 1, 1911, to January 1, 1912, and the agreement, exhibit ''A,''. is referred to and made part of exhibit ''B.'' It is then stated that, inasmuch as the title to the property is in first party who is also to furnish the money to conduct the business, ''the said first party (plaintiff) has at the time of the execution of this agreement executed and delivered untó said F. H. Johnston his certain promissory note dated January 1, 1911, for the said sum of $454.38, payable January 1, 1912''; . . . ''said note is given unto said second party in lieu of the profits belonging to said second party to the date January 1, 1912.'' (The date 1912 is doubtless error and should read January 1, 1911, which was the date of the settlement.)

It is alleged in the complaint that said agreements were entered into on the days of their dates and that defendant Johnston has no claim on said business ''excepting a stipulated salary and to one-fourth of the net profits of said business and property''; that defendant Johnston has elected not to purchase any interest in said business and so notified plaintiff, on November 20, 1911, and the whole thereof will vest in plaintiff on January 1, 1912, except Johnston's claim for the one-fourth part of the net profits for the year ending December 31, 1911; that said defendant Johnston, ''in violation of his implied and express covenants of said partnership agreement,'' is endeavoring to secure the goodwill of said business and secure the location in which said business is conducted, in this, that during the summer of 1911 plaintiff and defendant discussed the proposition of buying the premises occupied by them, the price being eight thousand dollars, but defendant Johnston discouraged it stating that ''he had no money to buy with; that he did not think there was any danger of any one else buying the property''; while at the same time he was planning to purchase said premises and to that end disclosed to defendants Green and Elbow the profits of said business and induced them ''to enter into

a conspiracy to subvert the terms of said partnership agreement and to secure the said business away from plaintiff without paying plaintiff anything therefor," pursuant to which said purpose defendants "are now endeavoring to accomplish the same by purchasing" the premises in which said business is being conducted. It is then alleged that defendants, on November 1, 1911, entered into a written agreement with the owners of said premises for the purchase thereof at the price of seven thousand five hundred dollars, on terms stated in the complaint, agreeing to pay $500 cash and the balance on installments, to wit: one thousand five hundred dollars January 1, 1912, and the balance in annual installments of one thousand dollars; that said efforts of defendant were without plaintiff's knowledge and contrary to his interests and were for the sole purpose "of taking plaintiff's business away from him"; that defendants have served plaintiff and defendant Johnston with notice to surrender the possession of said premises on January 1, 1912, and defendants and E. M. Wilson (owner of the premises) have served notice on plaintiff to quit possession on January 6, 1912, and that plaintiff is by the terms of his lease entitled to possession, said lease being from month to month payable on the sixth day of each month. It is next alleged that defendants have agreed to purchase the grocery stock of Wakefield & Walton, said agreement being entered into by defendant Johnston while a partner with plaintiff. It is further alleged that defendant Johnston tried to induce plaintiff to sell their stock of goods and business to said defendants Green and Elbow for less than plaintiff thought it worth, while defendant Johnston was himself interested with said other defendants. It is also alleged that plaintiff elects to adopt the acts of defendant Johnston in the purchase of said premises and "to accept the same as having been done for the benefit of plaintiff and offers to reimburse defendant Johnston for any money advanced by him in said purchase and is ready, able and willing to do the same and does hereby offer to do" anything necessary to the consummation of the purchase of said premises under said agreement to purchase by said defendants; that plaintiff has kept and performed all covenants by him to be performed; that at all times prior to November 20, 1911, "plaintiff supposed

that it was the intention of said Johnston to continue as a partner with plaintiff in said business,'' a supposition founded upon the conduct and actions of said Johnston; that ''plaintiff and defendant Johnston are now conducting said grocery business jointly as copartners and have joint possession thereof''; that ''plaintiff is ready and willing to have an accounting with said defendant at any time prior to January 1, 1912; has heretofore, and since learning of defendant's having interests contrary and adverse to the interests of said partnership, offered to have an accounting and settlement with said Johnston but defendant has refused to have an accounting; that plaintiff is entitled to an accounting and requests that an accounting be had not later than January 1, 1912; that on the first day of January, 1912, plaintiff is entitled to full possession and control of the whole of said business, together with the stock and fixtures and appliances used therein and the said premises upon which said business is conducted''; that, by the said acts of said Johnston, plaintiff has been damaged in the sum of one thousand five hundred dollars; that the defendant ''Modern Grocery Company'' is a corporation ''organized within the past week'' by defendants other than said company to take legal title to said premises and conduct a grocery business thereon and plaintiff is informed and believes that some ''interest in said property has been or is about to be transferred to said corporation and for that reason it is made party defendant.'' The complaint was filed prior to the date for the termination of exhibit ''A,'' to wit, December 20, 1911. The amendment to the complaint was filed February 10, 1912, and it states that plaintiff confines his claims as made in the complaint and its amendment to claims against defendant Johnston alone ''as the sole defendant in the action.'' Paragraph XIV is added to the complaint as an amendment in which it is alleged that said defendant Johnston and said defendants Green and Elbow took possession of the stock and business of said Wakefield & Walton and ever since have been and now are conducting said business under the name of ''Modern Grocery Co.''; that, on January 1, 1912, in accordance with said partnership agreement between plaintiff and defendant, a settlement was reached as to the value of the stock and fixtures of said firm of Donleavey & John-

ston and plaintiff took possession and control of the same "and endeavored to continue the said business on the premises described in paragraph one of plaintiff's complaint, but that, in accordance with the notice requiring plaintiff to vacate said premises January 6, 1912, . . . plaintiff was by the said parties serving said notice, forced to vacate said premises on the seventh day of January, 1912," and said defendants entered into possession and ever since have been and now are conducting a grocery business on said premises under the name of "Modern Grocery Co."; that "the fee title to said premises," in accordance "with the agreement to purchase alleged in the complaint," has been by deed of grant conveyed to said defendants Johnston, Green, and Elbow as tenants in common, "share and share alike"; that, "on account of said acts of defendant secretly and fraudulently purchasing the said premises and compelling plaintiff to vacate the same, plaintiff lost the business and goodwill of said business which by the terms of said partnership agreement defendant had agreed should belong to plaintiff; that defendant refuses to account to plaintiff for the said goodwill of said business."

The issues in the controversy are between plaintiff and defendant Johnston and are narrowed down to two: 1. Has plaintiff any enforceable interest in the title to the real property now held by Johnston? and, 2. Do the facts alleged entitle plaintiff to an accounting, or to an action for damages, to determine his interest in the lease of said property and in the goodwill of the business which he alleges was lost to him by Johnston's said wrongful acts and conduct?

We think the agreements sufficiently show that plaintiff and defendant Johnston were partners. They were associated "for the purpose of carrying on business together and dividing its profits between them" (Civ. Code, sec. 2395); and also impliedly dividing its losses. (Civ. Code, sec. 2405.)

"While, of course, the question whether or not a partnership exists is to be determined from the nature of the relation agreed upon, rather than the name which the parties have given to it, some weight must be allowed to the language of the parties themselves." (*Title Ins. & Trust Co.* v. *Grider,* 152 Cal. 746, 752, [94 Pac. 601].)

We do not think that the relation of defendant Johnston to plaintiff created by the agreements is changed from that of a partner to that of a mere clerk or hired man, as is contended by Johnston, by the "restrictions, prohibitions and conditions" found in the agreements. The provision that Johnston might draw out monthly eighty-five dollars also included plaintiff and is not an unusual provision in partnership agreements, for partners must live. Nor does the provision that plaintiff, who put up the money necessary to carry on the business, should have the right to dictate as to purchases of a value greater than twenty dollars, or that he should make purchases in his own name, or that after the termination of the agreements plaintiff should conduct the business in his own name, necessarily show that they were not partners during the existence of the agreements. Notwithstanding these safeguards for plaintiff's benefit, defendant was to share in the profits and was chargeable with losses in the business carried on as it was under the firm name of Donleavey & Johnston.

"The goodwill of a business is the expectation of continued public patronage" (Civ. Code., secs. 992, 993); and is property transferable like any other property. Its loss may be the subject of damages. (*Snow* v. *Holmes,* 71 Cal. 142, 148, [11 Pac. 856].) In *Bell* v. *Ellis,* 33 Cal. 620, 624, the court quotes approvingly from Story on Partnership, section 99, as follows: Goodwill has been defined "to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill and affluence, or punctuality, or from other accidental circumstances, or necessities, or even from ancient partialities or prejudices." The court, in its opinion, said, it is "an element of strength and permanency which adds very much to the value of the premises and stock when decreed to be sold and will accompany the sale. According to Lord Eldon it is the probability that the business will continue in the future as in the past, adding to the profits of the concern and

contributing to the means of meeting its engagements as they come in.''

This goodwill attached itself to the business and plaintiff was entitled to enjoy it after defendant ceased to be a partner, for it was expressly provided that he was to continue the business in his own name if his partner did not exercise the option given him to remain in the firm. The intention of the parties was to build up a business which was to continue after the agreements terminated. The partnership was formed to conduct its business at a particular street corner and, as we have seen, the place where it is conducted may be of great value. To be compelled to remove from the place where the trade of the firm has been built up may seriously affect the success of the enterprise.

It was held in *Anderson* v. *Lemon,* 8 N. Y. 236, that where one partner secretly makes a purchase of premises occupied by the firm, while the other party with his concurrence is negotiating with the owner to obtain the property for the use of the firm, the purchaser will be declared a trustee for the firm. There can be no doubt of the soundness of the principle upon which this case was decided, that the partnership relation is one of confidence and trust and every partner is bound to act in the highest good faith toward his copartners and may not obtain any advantage over them in the partnership affairs by misrepresentation, concealment, or adverse pressure of any kind; and this is but the doctrine of our Civil Code found in sections 2410 and 2411. The principle is more frequently invoked in renewals of leases, as merchants and tradesmen seldom own the property occupied for their business. *Mitchell* v. *Reed,* 61 N. Y. 123, [19 Am. Rep. 252], is an instructive case of this character. The authorities as to the right of trustees and partners to take renewal leases for their own benefit are there collated and discussed. It was held that one member of a copartnership cannot, during its existence, take a renewal for his own benefit of premises leased by the firm, upon which it has made valuable improvements, and by the joint efforts of the members made the goodwill valuable and enhanced the value of the premises, and this although the term of the renewal lease did not begin until after the copartnership had expired by its own limitations; that a lease so taken by one partner

in his own name enures to the benefit of the firm, and the partner in whose name it is taken can be required to account to his copartners for its value; and it is not material that the landlord would not have granted the new lease to the other partners of the firm. (Syllabi.) Speaking of *Struthers* v. *Pearce,* 51 N. Y. 357, the court, by Earle, C., said: "The principle which lies at the foundation of the decision of that and similar cases must be the one above stated, that the defendants in possession took advantage of their position to procure the new lease, and thus deprived the plaintiff of a benefit to which he, with them, was equally entitled." In a note to *Moody* v. *Mathews,* 17 Ves. 185, the learned editor says, as a deduction from adjudged cases, that "with a possible exception in favor of a *bona fide* purchaser, it seems an universal rule that no one who is in possession of a lease with any sort of equity in behalf of third persons, can renew the same for his own use only; but such renewal must be construed as a graft upon the old stock." After reviewing the cases, the learned judge says: "I therefore conclude that it makes no difference that the leases were obtained for a term to commence after the partnership, by its own limitation, was to terminate. I can find no authority holding that it does, and there is no principle sustaining the distinction claimed. The defendant was in possession as a member of the firm, and the firm owned the goodwill for a renewal, which ordinarily attaches to the possession. By his occupancy, and the payment of rent, he was brought into intimate relations with the lessors; he became well acquainted with the value of the premises, and he took advantage of his position, during the partnership, secretly to obtain the new leases. He must hold them for the firm." Dwight, C., reviews the cases more fully. Quoting at length from the leading case of *Lee* v. *Vernon,* 5 Brown's Parl, Cases, 10 (Eng. ed., 1803), Judge Dwight said: "The *cestui que trust* has a right to the *chance* of renewal. Though this is termed a 'tenant right' as between the lessee and the landlord, that is a mere phrase. It is a hope, an expectation, rather than a right. Such as it is, the trustee shall not take it to himself, but if it results in any substantial benefit he shall hold for his beneficiary." Citing cases. . . . "The sound rule is, that he cannot make any profit to himself from a secret

transaction *initiated* while the relation of trustee and *cestui que trust* exists, no matter when it springs into actual operation.'' Among other of the conclusions reached by the learned judge, it is stated: that ''this doctrine extends to commercial partnerships, and one of several partners cannot, while the partnership continues, take a renewal lease clandestinely, or 'behind the backs' of his associates, for his own benefit; it is not material that the landlord would not have granted the new lease to the other partners, or to the firm.'' Furthermore, that ''it is of no consequence whether the partnership is for a definite or indefinite period. The disability to take the lease for individual profit grows out of the partnership relation. While that lasts, the renewal cannot be taken for individual purposes, even though the lease does not commence until after the expiration of the partnership. . . . Common justice and due regard to rules of public policy demand that the renewal leases should be declared to belong to the firm, and that the defendant should be required to account to the plaintiff for his portion of its value.'' The doctrine here announced is summarized by Mr. Pomeroy as sound at the present time, although defendant suggests that the rules enunciated in *Anderson* v. *Lemon,* 8 N. Y. 236, and *Mitchell* v. *Reed,* 61 N. Y. 123, [19 Am. Rep. 252], by reason of their antiquity, have become obsolete. (3 Pomeroy's Equity Jurisprudence, sec. 1050.) In *Knapp* v. *Reed,* 88 Neb. 754, [Ann. Cas. 1912B, 1095, 32 L. R. A. (N. S.) 869, 130 N. W. 430], it was held that in a partnership carrying on business in premises which it holds under a lease, neither partner can, without the consent of the other, take a renewal of the lease in his own name and so exclude the other partner and secure the goodwill of the business for himself, and where this is attempted the lease will enure to the benefit of both partners, and where dissolution of the partnership, without an adjustment by the partners of their rights in the goodwill of the business and in the premises which they hold under the lease, it is the province of a court of equity to adjust such differences. Among the cases cited in support of the doctrine is *Mitchell* v. *Reed,* 61 N. Y. 123, [19 Am. Rep. 252]. *Warren* v. *Schainwald,* 62 Cal. 56, was a case where one member of a firm composed of several parties, after the death of one of them, falsely and with the in-

tent to prevent a proper settlement, represented to his surviving copartners that he had become the owner of the interest of the deceased and thus prevented a purchase by them of such interest. It was held that the purchase was made for the benefit of plaintiff and defendants. It appeared in the case that the interest of the deceased partner would have been purchased by the surviving partners for their mutual benefit if the plaintiff, Warren, had not prevented such purchase by misrepresentations, and under such circumstances he was justly held to have purchased for the benefit of himself and the defendants, his copartners. So, in *Anderson* v. *Lemon*, 8 N. Y. 236, the partners were negotiating with the owner for the purchase of the property, showing an unmistakable intention to purchase, when one of the partners thwarted this design by himself becoming the purchaser. While the equitable doctrine of these cases, as of the cases involving leases, is sound, we are unable to see that plaintiff has shown a clear right to share as tenant in common of the fee now held by defendant Johnston and his cotenants. He discussed with his partner, at one time, the propriety of purchasing the property and was discouraged by him from making the purchase. It does not appear, however, that he really desired to purchase nor that he would have done so had he not been dissuaded by his partner from doing it. Furthermore in view of the provisions of the agreements, we are unable to see how the quantity of interest in the land to which plaintiff would be entitled could be definitely ascertained. By the terms of the partnership agreements he owned all the property of the partnership and Johnston's interest was a share in the net profits only. The fee ownership of the *situs* or land on which the business was conducted was not contemplated and nothing more than a leasehold interest in it was necessary to the business. But it is because plaintiff has been deprived of this leasehold interest, or a right to acquire it, by the acts of Johnston in clandestinely purchasing the land that plaintiff has been damaged. This damage consists in loss of the goodwill of the business and in being compelled to seek some other place to conduct it. In ascertaining the damage thus inflicted some consideration should be given to the value of the lease

to plaintiff as securing to him the enjoyment of the good-will to which the location has in part contributed.

We are clearly of the opinion that a cause of action is sufficiently stated as the basis for a judgment for damages should the evidence warrant it and that an accounting should be had to that end.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.