[Civ. No. 5195.  First Appellate District, Division One.—December 28, 1925.]

# LOUIS E. RUPPE, Appellant, v. LAWSON F. UTTER, Respondent.

[1] PARTNERSHIP — DISSOLUTION — CONTINUANCE OF BUSINESS — AC-COUNTING.—In this action for an accounting as to the profits made by defendant in continuing a partnership undertaking, embalming, and funeral directing business with partnership tangible and intangible properties, the evidence did not warrant the conclusion and findings of the trial court to the effect that defendant was the sole owner of the business after the dissolution of the partnership, and that he was under no obligation to account to plaintiff for any of the profits derived from such business after the dissolution, but was only bound to account for the reasonable value of the use of the furniture and fixtures.

[2] LANDLORD AND TENANT—BREACH OF COVENANT AGAINST ASSIGN-MENT—TERMINATION OF LEASE.—A covenant against subletting or assigning when violated by the lessee does not *ipso facto* terminate or render void the lease, as the lessor has the option of declaring the same void or ignoring the breach and treating the lease as subsisting; and a notice from the lessor to the lessee merely stating that the former "shall expect to take" proceedings to cancel the lease in the event of assignment contrary to the lease will not effect a forfeiture of the lease where no such proceedings are ever taken.

[3] ID.—LEASE TO TWO LESSEES—ASSIGNMENT BY ONE.—Where a lease runs to two lessees jointly, and there is a covenant not to assign without the consent of the lessor, the covenant is a joint one and is not broken by the action of one of the covenantors in attempting to assign or sublet.

[4] PARTNERSHIP—DISSOLUTION—CONTINUED USE OF LEASED PREMISES —PARTIES BENEFITED.—Where a lease to two partners is not terminated upon the dissolution of the partnership, any month to month arrangement for the use of the leased premises, effected with the lessor by the remaining partner, inures to the benefit of both partners.

[5] ID. — PERMIT TO CONDUCT BUSINESS — MISREPRESENTATION AS TO OWNERSHIP OF BUSINESS.—The business of said partners having

2.  See 15 Cal. Jur. 779; 16 R. C. L. 1118.
3.  See 15 Cal. Jur. 763.

been conducted under a permit issued by the city council, and defendant having conducted the business under such permit for a period of time after dissolution, his act in surrendering such permit and causing a new one to be issued to himself in his own name, upon the representation that he was the sole owner of the business, was without legal authority and amounted to no more than an attempt on his part to acquire a privilege to which he was not entitled.

[6] ID.—CONTINUANCE OF BUSINESS—LIABILITY FOR PROFITS.—In an action for an accounting as to the profits made by defendant in continuing an undertaking, embalming, and funeral directing business, when the evidence shows without conflict that, after dissolution of the partnership between plaintiff and defendant, the latter used the premises and personal property of the partnership, together with the permit to do business, as his own without right or warrant, defendant should be made to account for all profits arising from such use.

[7] ID.—GOODWILL—RIGHT OF SALE.—Goodwill is property recognized and protected by the law as such and capable of sale and transfer from one owner to another, and it is an asset which may be sold in connection with a business.

[8] ID.—OTHER BUSINESS CONNECTIONS—RIGHT TO SHARE IN PARTNERSHIP GOODWILL.—Upon the dissolution of the partnership, any partner has the right to form other connections and advise his friends of this fact and solicit their business, and his acts in so doing will not in any manner affect or impair his right to share in the goodwill of the partnership.

[9] ID.—CONTINUED POSSESSION OF PARTNERSHIP ASSETS—RIGHT OF RETIRING PARTNER TO PROFITS.—While the remaining partner, after dissolution, has the right to form other connections and advise his friends of this fact and solicit their business, in the exercise of this right he is not authorized to prolong his possession of the assets of the partnership for the purpose of continuing the business and deriving profits therefrom, and if he does so he must be held to account to his retiring partner for any profit so made, and not merely for the use of the partnership property.

[10] ID.—DISSOLUTION — TRUST CAPACITY OF REMAINING PARTNER — WINDING UP OF AFFAIRS.—The remaining partner after dissolu-

6. See 20 Cal. Jur. 817.

7. Goodwill as property, note, 3 L. R. A. 769. See, also, 13 Cal. Jur. 52; 12 R. C. L. 982.

10. See 20 Cal. Jur. 807.

tion occupies the position of a mere trustee, and his right to the possession of the partnership assets is merely for the purpose of winding up the partnership affairs.

(1) 30 Cyc., p. 737, n. 73.   (2) 35 C. J., p. 1066, n. 89 New, p. 1075, n. 11.   (3) 35 C. J., p. 1066, n. 89 New.   (4) 30 Cyc., p. 610, n. 48 New.   (5) 30 Cyc., p. 610, n. 48 New.   (6) 30 Cyc., p. 610, n. 48, p. 665, n. 84, p. 687, n. 22, 23, p. 697, n. 4.   (7) 28 C. J., p. 730, n. 8, p. 735, n. 46, 49, p. 737, n. 64.   (8) 30 Cyc., p. 608, n. 37, p. 688, n. 26 New.   (9) 30 Cyc., p. 610, n. 48, p. 665, n. 84, p. 688, n. 26 New.   (10) 30 Cyc., p. 660, n. 42 New.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. A. Smith, Judge.   Reversed.

The facts are stated in the opinion of the court.

Wm. Schreider for Appellant.

Lewis Cruickshank for Respondent.

TYLER, P. J.—Action brought by plaintiff against defendant for an accounting after dissolution of a copartnership.

The complaint alleges that plaintiff and defendant entered into and formed a partnership on the twenty-fourth day of May, 1915, for the transaction of a general undertaking, embalming, and funeral directing business.   The partnership was known and designated as "Moneta Avenue Undertaking Company" and was situated at 4254 Moneta Avenue, in the city of Los Angeles.   The copartners were to share equally in the property and profits of said business.   The partnership was terminated and dissolved on or about April 5, 1922. At the time of its dissolution there were accounts receivable which it is alleged amounted to the sum of $36,000.   These accounts were amicably divided between plaintiff and defendant and do not enter into the controversy.   There was also belonging to the partnership certain furniture, furnishings, fixtures, embalming tools, and implements, and stock in trade consisting of caskets, draperies, and supplies which plaintiff alleged to be of the value of $17,500, but which defendant in his answer claimed did not exceed in value the sum of $8,000.

This property was sold under the judgment or decree made by the court and the funds derived therefrom, amounting to the sum of $11,146.26, were divided equally between the parties. This item is therefore also eliminated, so that the tangible property of the partnership is in no manner here involved. The remaining items in the complaint consist of the demand for an accounting of one-half of the proceeds or profits made by defendant in continuing the business with the use of the fixtures, stock in trade, and permit of the former copartnership after dissolution, together with the value of the leasehold and the goodwill thereof.

Trial was had and judgment rendered in favor of plaintiff for the rental value of the use of the personal property which was fixed in the sum of $58.33 per month from the sixth day of April, 1922, to the twenty-first day of August, 1923, the date of the entry of the judgment, a period of some sixteen months, making in all a total sum of $933.28. Appellant claims that as the evidence shows that defendant retained the property of the partnership after dissolution, and continued to carry on the business with the use thereof at a profit, that he should have been held to account for such profits.

It appears from the evidence that after the parties had entered into the copartnership they continued to transact business under their agreement up to April, 1922. The enterprise was a successful one, for in the year preceding the dissolution, according to plaintiff's testimony, the net profits thereof amounted to some $39,500.

The articles of copartnership provided among other things that in the event either of the copartners desired to sell his interest in the business, he should give to the other copartner a ten-day option to purchase the same at the price and on the same terms as the interest might be offered to any third party. About March 25, 1922, the partners became dissatisfied with their association and plaintiff, in conformity with the partnership agreement, addressed a written communication to defendant Utter advising him that he had been offered $30,000, excluding the book accounts, for his interest in the business, and that he would sell to Utter at that figure. In response to this offer, Utter asked if plaintiff would purchase his interest for the sum of $25,000. Plaintiff agreed to do so and procured a certified check for this

amount to carry out this arrangement. Utter then refused to sell, whereupon plaintiff, on April 6, 1922, sold his interest to others for the sum of $30,000. On the same day he notified Utter of the sale.

It further appears from the evidence that Utter at first was willing to accept the purchasers as his partners, but later refused to have anything to do with them. Ruppe thereupon returned to them the purchase price and received a reconveyance of their interest.

At the time of the dissolution of the partnership the firm owned a certain lease in the premises in which their business was being conducted, extending to and including the thirty-first day of March, 1923, at a monthly rental of $200. Utter remained in possession of these premises after the dissolution and there continued the undertaking business and he used in the conduct of said business the personal property, including the furniture, furnishings, and stock in trade, and the like, of the former copartnership. Up to June 10, 1922, about two months after the dissolution, he kept the original sign over the doors in front of the establishment and thereafter replaced it with another of practically the same import. At the time of the attempted transfer the landlord of the premises notified plaintiff Ruppe that any conveyance by him of his interest would be in violation of the terms of the lease justifying its cancellation. The lease contained a clause which precluded an assignment without the consent of the landlord in writing. The place where the property was located was zoned for the character of business conducted by the parties, and it was so conducted by them under a permit issued by the city council of the city of Los Angeles. About the fifteenth day of May, 1922, Utter, without the knowledge or consent of plaintiff, surrendered the permit and made application for and was granted a new one in his own name.

[1] Under all these facts defendant characterizes himself as the sole owner of the business, for which reason he claims he was under no obligation to account to plaintiff for any of the profits derived from such business after the dissolution, but was only bound to account for the reasonable value of the use of the furniture and fixtures. The trial court took this view and entered findings accordingly.

The evidence does not warrant this conclusion. [2] In the first place the partnership lease was never terminated nor canceled. The notice given by the landlord was one merely to the effect that a transfer by Ruppe of his interest would work a forfeiture. None, however, was ever attempted to be declared. A covenant against subletting or assigning when violated by the lessee does not *ipso facto* terminate or render void the lease. The lessor has the option of declaring the same void or ignoring the breach and treating the lease as subsisting. Then, too, the notification merely stated that the landlord "shall expect to take" proceedings to cancel the lease. No such proceedings, however, were ever taken. [3] Aside from this, it is well established that where a lease runs to two lessees jointly, and there is a covenant not to assign without the consent of the lessor, the covenant is a joint one and is not broken by the action of one of the covenanters in attempting to assign or sublet. (*Spangler* v. *Spangler,* 11 Cal. App. 321 [104 Pac. 995]; *Randol* v. *Scott,* 110 Cal. 590 [42 Pac. 976].)

[4] The lease not having been terminated, any month to month arrangment effected by Utter with the landlord for the use of the premises inured to the benefit of Ruppe as well as defendant. (*Donleavey* v. *Johnston,* 24 Cal. App. 319 [141 Pac. 229].)

[5] With reference to the permit to conduct the business the evidence shows, as above narrated, that it was used by Utter up to May 16, 1922, at which time he surrendered it and caused to be issued to himself a new one in his own name. It further appears that the new permit was obtained by representations that he was the sole owner of the business. He had no legal authority to make this change and it amounted to no more than an attempt on his part to acquire a privilege which under the facts of the case he was not entitled to.

[6] The evidence shows without conflict that Utter used the premises and personal property of the partnership, together with the permit to do business, as his own without right or warrant, and he should be made to account for all profits arising from such use. The leasehold interest, the permit to do business and the goodwill of the partnership were as much assets as the fixtures which each partner was

entitled to have converted into cash. (30 Cyc. 687, 697; *Donleavey* v. *Johnston, supra.*) [7] Goodwill is property recognized and protected by the law as such and capable of sale and transfer from one owner to another. It is an asset which may be sold in connection with a business. How far its value might be affected by the competition of the retiring partner is an element of course to be taken into consideration in fixing of such value (28 Cor. Jur., p. 735).

There is no question that the goodwill of this concern had been a valuable one. For the year 1920 the business had yielded a net profit of $32,000, each of the partners receiving $16,000 as his share. The following year and just prior to the dissolution the business had yielded a net profit of $39,500, according to testimony of plaintiff.

[8] Nor is plaintiff's right to his share in this asset in any manner affected as claimed, or impaired by the fact that after the dissolution he formed other connections and advised his friends of this fact and solicited their business.

[9] This, as above indicated, he had a right to do. (28 Cor. Jur. 735.) Defendant, of course, had the same right. In the exercise of this right, however, he was not authorized to prolong his possession of the assets of the firm for the purpose of continuing the business and deriving profits therefrom. Having done so he must be held to account to his retiring partner for any profits so made. [10] His right to the possession of the assets was merely for the purpose of winding up the partnership affairs. The trial court in confining the relief granted to the mere value of the use of the property, misconceived the effect of the evidence, and its finding under the facts narrated that defendant conducted the business for his exclusive benefit finds no support therein. Defendant occupied the position of a mere trustee. Having used the assets in question in conducting the business, he must be made to account for the profits derived therefrom.

The judgment is reversed.

Knight, J., and Cashin, J., concurred.